OPINION
{¶ 1} The 2600 Far Hills Building Partnership ("FHBP") appeals from the trial court's entry of summary judgment against it on its breach-of-contract complaint against appellee Premier Integrated Medical Associates, Ltd. ("PriMed").
 {¶ 2} FHBP advances two assignments of error on appeal. First, it contends the trial court erred in entering summary judgment on its claim that PriMed breached a duty to vacate leased office space without causing damage or waste. Second, it argues the trial court erred in entering summary judgment on its claim that PriMed breached a duty to leave the premises in as good a condition as when occupancy was taken.
 I. Factual and Procedural Background {¶ 3} The present appeal stems from the leasing of medical office space on the second floor of the 2600 Building on Far Hills Avenue in Oakwood. A group of physicians known as Dayton Internal Medicine Associates ("DIMA") began leasing the space from FHBP in the 1970s. At that time, most if not all of the DIMA physicians were also partners in FHBP. Thus, the physicians leased space in a building they owned. In their capacity as tenants, the DIMA physicians also remodeled the second-floor twice in the 1980s. Both remodeling projects occurred while the physicians were acting in their dual roles of owner/lessor and tenant/lessee. Because the building owners were the second-floor tenants, FHBP was aware of and consented to DIMA's remodeling.
 {¶ 4} In 1986, DIMA entered into a new, eleven-year lease with FHBP. Approximately nine years later, however, DIMA decided to wind down its operations. Some of the DIMA physicians formed PriMed and began practicing under that name. As part of the transition, DIMA assigned the remaining term of its eleven-year lease to PriMed, which continued to occupy the second floor. The assigned lease expired on February 28, 1997. PriMed then entered into its own lease with FHBP for a five-year term from March 1, 1997, through February 28, 2002. PriMed made no significant alterations to the second floor during its tenancy under the five-year lease.
 {¶ 5} Toward the end of the five-year term, PriMed expressed concerns about the layout and condition of its office space. At that time, most of the PriMed physicians were not members of FHBP. Thus, unlike when DIMA occupied the second floor, the interests of the building owners and tenants no longer were in complete harmony. After failing to resolve PriMed's concerns, FHBP indicated in July, 2001, that it would not renew the lease. Before the lease expired, FHBP also took the position that PriMed would be responsible for removing a receptionist station and replacing a window air conditioner with glass. PriMed refused to make these changes, denying that it had any obligation to do so. The lease subsequently expired on February 28, 2002, and PriMed vacated the premises. After PriMed's departure, FHBP began remodeling the second floor in an effort to attract several smaller tenants.
 {¶ 6} On June 7, 2002, FHBP filed suit against PriMed for breach of contract. The complaint alleges that PriMed is responsible for waste, damage, and alterations to the second floor. It also alleges that PriMed failed to leave the second floor in as good a condition as when it took occupancy. The record reveals that these claims primarily concern the remodeling alterations that DIMA made to the second floor long before assigning its lease to PriMed. In essence, FHBP contends DIMA's remodeling efforts in the 1980s have rendered the second floor obsolete, dysfunctional, and impossible to lease to a new tenant today. As a result, it seeks to hold PriMed responsible for the cost of undoing DIMA's alterations and renovating the second floor. FHBP also alleges that PriMed caused damage when vacating the building, and it seeks compensation for that as well.
 {¶ 7} In a November 12, 2003, ruling the trial court entered summary judgment in favor of PriMed. The trial court held that PriMed was not responsible for the cost of undoing the remodeling performed by DIMA in the 1980s. As for actual damage caused by PriMed when vacating the property, the trial court found no evidence of anything other than some holes in the walls. It also noted that FHBP was in the process of gutting the second floor and removing the walls to attract a different clientele. In light of this remodeling, the trial court found no harm to FHBP, and no basis for claiming damages, as a result of the holes.
 II. Analysis {¶ 8} As a means of analysis, we turn first to FHBP's second assignment of error. There FHBP contends the trial court erred in entering summary judgment on its claim that PriMed breached a duty to leave the premises in as good a condition as when occupancy was taken.
 {¶ 9} The essence of FHBP's argument is that DIMA did such a poor job remodeling the second floor that it actually harmed the value of the property, and that PriMed is responsible for the cost of undoing the remodeling. To reach this conclusion, FHBP relies on language in its lease with DIMA and the subsequent assignment to PriMed. In particular, FHBP cites Paragraph 21 of the lease, which provides: "TENANT covenants and agrees to deliver up and to surrender to OWNER the possession of the DEMISED PREMISES upon the expiration or termination of this lease, in as good condition and repair as the same shall be at the commencement of the term provided for herein; ordinary wear and tear, acts of God, public enemy, riots, and other casualty excepted." FHBP contends DIMA's remodeling put the premises inworse condition than it was at the commencement of the lease term. As a result, FHBP argues that Paragraph 21 imposed on DIMA a contractual duty to undo the remodeling and to return the second floor to "as good condition" as at the commencement of the lease.
 {¶ 10} FHBP next cites Section 3 of DIMA's lease assignment to PriMed. This provision states: "Assignee [PriMed] hereby assumes all of the obligations of Assignor under the Lease which, pursuant to the terms and provisions of said Lease, are to be performed on or after the Effective Date of this Assignment * * *." FHBP reasons that on the effective date of the assignment, DIMA had an obligation to put the second floor in "as good condition" as at the start of the lease. Therefore, pursuant to Section 3, FHBP claims PriMed assumed this obligation. FHBP insists that PriMed then failed to leave the second floor in "as good condition" as at the start of DIMA's lease when it vacated the property without undoing the remodeling. As a result, FHBP contends PriMed breached Paragraph 21 of the lease that it took by assignment from DIMA. Alternatively, FHBP argues that PriMed's failure to undo the remodeling violated nearly identical language in Paragraph 21 of the 1997 lease between FHBP and PriMed.[1]
 {¶ 11} Upon review, we find no error in the trial court's entry of summary judgment against FHBP. The record reflects that DIMA remodeled the second floor in the 1980s with the full knowledge and consent of FHBP. (See, e.g., Caverlee depo. at 68-72). FHBP's knowledge and consent are indisputable because the members of DIMA and FHBP were the same. (Id. at 17). Given that the members of FHBP approved their own remodeling efforts as members of DIMA, a claim that the remodeling violated the lease rings hollow. In any event, FHBP plainly waived any objection to DIMA's remodeling by consenting to it. Ohio Farmers Ins. Co. v.Cochran (1922), 104 Ohio St. 427, at paragraph three of the syllabus (recognizing that contract terms may be waived "by the acts and conduct of the parties"); Avki, Inc. v. Avery (June 3, 1993), Montgomery App. No. 13504 (same).[2] As a result, PriMed cannot be held responsible for undoing the remodeling regardless of whether it stepped into DIMA's shoes via the lease assignment. FHBP's second assignment of error is overruled.
 {¶ 12} In its first assignment of error, FHBP contends the trial court erred in entering summary judgment on its claim that PriMed breached a duty to vacate the second floor without causing "damage or waste." The only damage or waste specified in this assignment of error consists of holes left in the walls when PriMed removed its equipment and vacated the premises.
 {¶ 13} As noted above, the trial court essentially found that the holes were immaterial in light of FHBP's renovation plan, which included removing the walls at issue. On appeal, FHBP insists that "it makes no sense to penalize the Building for attempting to mitigate damages by gradually restoring sections of the 15,527 sq. ft. to service." FHBP also argues that it did not waive its objection to the holes and that it was not required to conduct a post-lease "walk through" with a representative of PriMed.
 {¶ 14} Upon review, we find no error in the trial court's determination that the holes left in the walls on the second floor were immaterial.[3] To prevail on a breach-of-contract claim, a plaintiff must prove the existence of damages. Doner v. Snap (1994), 98 Ohio App.3d 597, 600. In the present case, the record reflects that even before PriMed vacated the premises, FHBP planned to renovate and reconfigure the second floor so the area could be converted into suites for smaller tenants.[4] (Waske depo. at 230-233). In accordance with this plan, FHBP removed the walls with the holes in them after PriMed's departure. (Id. at 129-130, 138). These facts belie FHBP's claim that it removed the walls merely to mitigate damages caused by PriMed's holes. Given FHBP's plan to remove the walls upon PriMed's departure, we fail to see how FHBP was damaged by the existence of holes in the walls. Finally, insofar as FHBP's brief might be read as alleging "damage or waste" based on remodeling or alterations to the second floor, PriMed was entitled to summary judgment for the reasons set forth in our analysis of the second assignment of error, supra. In short, the record reflects that DIMA made the alterations in the 1980s with the knowledge and consent of FHBP. Accordingly, we overrule FHBP's first assignment of error.
 III. Conclusion {¶ 15} Having overruled FHBP's two assignments of error, we affirm the judgment of the Montgomery County Common Pleas Court.
Fain, P.J., and Young, J., concur.
[1] Paragraph 21 of the 1997 lease between FHBP and PriMed provides: "Except as otherwise provided herein, TENANT covenants and agrees to deliver up and to surrender to OWNER possession of the DEMISED PREMISES upon the expiration or termination of this Lease, in as good condition and repair as the same shall be at the commencement of the term provided for herein; ordinary wear and tear, acts of God, public enemy, riots and other casualty excepted."
[2] In Avki, we observed that whether contract terms have been waived is a "question of fact." This does not mean, however, that the entry of summary judgment against FHBP on the basis of waiver is improper. "Indeed, many `questions of fact' are resolved, as a matter of law, when the evidence is such that a trier of fact could not find for the non-moving party." HollowaySportswear, Inc. v. Zeeman (S.D. Ohio March 27, 2000), 2000 WL 988267 at *7. In the present case, we find no genuine issue of material fact as to whether FHBP approved DIMA's remodeling and thereby waived any objection to it.
[3] In light of this determination, we need not decide whether FHBP waived its objection to the holes or should have conducted a "walk through" of the building.
[4] When it declined to renew or renegotiate PriMed's lease, FHBP had no interest in replacing PriMed with another large tenant. FHBP preferred to replace PriMed with smaller tenants, and it renovated the second floor with that goal in mind. (Waske depo. at 196-197).