MEYER, Appellee and Cross–Appellant,

v.

CHIEFFO, Appellant and Cross–Appellee.

[Cite as *Meyer v. Chieffo,* 180 Ohio App.3d 78, 2008-Ohio-6603.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 07AP–890.

Decided Dec. 16, 2008.

Conkle, Ellis, Fergus & MacDowell, L.L.P., and William D. Fergus Jr., for appellee and cross-appellant.

Tyack Blackmore & Liston Co., L.P.A., and Thomas M. Tyack, for appellant and cross-appellee.

BROWN, Judge.

{¶ 1} This is an appeal by defendant-appellant, Dominic Chieffo, from a judgment of the Franklin County Court of Common Pleas, following a jury trial in which the jury rendered verdicts finding that appellant had not defaulted under a land installment contract and, further, finding on appellant's counterclaim that plaintiff-appellee, Philip Meyer, breached the land installment contract regarding the treatment of mold. Appellee has filed a cross-appeal from the trial court's judgment.

{¶ 2} In 2003, appellee was the owner of property located at 15 Grandview Drive, Dublin. Appellee had entered into a management agreement with OPE, Inc., d.b.a. Complete Property Resources ("CPR"), granting CPR the authority to manage, lease, or rent the property at 15 Grandview Drive on behalf of appellee. In November 2003, appellee and appellant entered into a land installment contract, whereby appellant agreed to purchase the subject property for $209,000.

{¶ 3} On August 15, 2005, appellee filed a complaint in Franklin County Municipal Court for forcible entry and detainer, and to terminate the land installment contract. In the complaint, appellee alleged that appellant had violated the terms of the contract by failing to make monthly payments. The complaint requested that appellant's rights under the contract be forfeited, and that judgment be entered in favor of appellee for amounts due under the contract, as well as an amount for deterioration or destruction to the premises.

{¶ 4} Appellant filed a counterclaim and an amended counterclaim, alleging in part that appellee and CPR had negligently allowed a hazardous and/or defective condition to exist on the residential premises in the form of various toxins, including mold, and that such negligence subjected appellant to the hazardous exposure of mold. In addition to a negligence claim, appellant alleged causes of action for breach of contract, breach of warranty, negligent infliction of emotional distress, negligence per se, private nuisance, public nuisance, premises liability, failure to make repairs, failure to inspect, defects, trespass, battery, misrepresentations, and failure to disclose.

{¶ 5} The action was subsequently transferred to the Franklin County Court of Common Pleas. On May 2, 2006, the trial court entered an order for appellant to deposit with the clerk of courts all funds currently being held on his behalf in his attorney's trust account.

{¶ 6} The matter came for trial before a jury beginning April 24, 2007. Following deliberations, the jury returned a verdict on appellee's forcible-entry-and-detainer claim, finding that appellee had "failed to prove by a preponderance of the evidence that [appellant] defaulted under the land-installment contract by failing to make monthly payments on that contract, without legal justification."

On appellant's counterclaim, the jury returned a verdict finding appellant "has proven by a preponderance of the evidence that [appellee] breached the land-installment contract regarding the treatment of the mold in the attic, and hereby award [appellant] the sum of $0, as damages."

{¶ 7} On May 8, 2007, appellant filed a motion for damages. On May 22, 2007, appellee filed a memorandum contra appellant's motion for damages. On September 28, 2007, the trial court filed a decision and entry regarding "disposition of funds placed in escrow," holding in part that the money held in escrow "shall be used to treat the mold problem." Also on that date, the trial court filed a judgment entry regarding the jury verdicts, entering judgment in favor of appellant on appellee's claim that appellant defaulted under the land installment contract, and further rendering judgment in favor of appellant on his counterclaim, "but with no damages."

{¶ 8} On appeal, appellant sets forth the following three assignments of error for review:

I. Given the jury verdict in favor of the defendant on the counterclaim the award of zero dollars in damages contrary to law and against the manifest weight of the evidence.

II. The trial court erred in refusing to allow defendant to present evidence as to physical injury suffered by the defendant as a result of the mold on the premises to the jury.

III. The trial court erred in purporting to issue an order allocating funds being paid into escrow pursuant to its order during the pendency of the case given the verdict of the jury finding that the defendant had not breached the terms of the land contract and the fact that the plaintiff had failed to properly maintain the premises, etc. With regard to the issue of mold.

{¶ 9} In his cross-appeal, appellee sets forth the following single assignment of error for review:

The Court erred when it instructed the jury to find for the Plaintiff if Plaintiff proved, by a preponderance of the evidence, that Defendant defaulted under the land installment contract without legal justification.

{¶ 10} We will initially address appellant's second assignment of error under which he argues that the trial court erred in refusing to instruct the jury on the issue of personal physical injury arising out of the presence of mold at the residence. Appellant maintains that while the core issue giving rise to liability was appellee's failure to remedy the mold condition in the premises, the presentation of evidence as to physical injury suffered by appellant as a result of exposure to the mold was an element of damages that should have been considered.

{¶ 11} In response, appellee argues that the trial court did not err in failing to instruct on the issue of appellant's physical injury, because appellant failed to introduce any expert testimony at trial that would prove that the particular mold found at the property actually caused his medical condition. In support of this argument, appellee relies upon the Ohio Supreme Court's decision in *Terry v. Caputo,* 115 Ohio St.3d 351, 2007-Ohio-5023, 875 N.E.2d 72.

{¶ 12} In *Caputo,* at paragraphs one, two, and three of the syllabus, the Ohio Supreme Court held:

1. To present a prima facie case involving an injury caused by exposure to mold or other toxic substance, a claimant must establish (1) that the toxin is capable of causing the medical condition or ailment (general causation), and (2) that the toxic substance in fact caused the claimant's medical condition (specific causation).

2. Establishing general causation and specific causation in cases involving exposure to mold or other toxic substances involves a scientific inquiry, and thus causation must be established by the testimony of a medical expert.

3. Without expert testimony to establish both general causation and specific causation, a claimant cannot establish a prima facie case of exposure to mold or other toxic substance.

{¶ 13} Upon review of the record, we agree with appellee that the trial court did not err in failing to instruct as to the issue of personal injury arising out of the presence of mold. At trial, the evidence appellant primarily relied upon was his own testimony that he began suffering symptoms such as sneezing, watery eyes, and a runny nose. Appellant further testified he had been treated by an allergist, who informed him that he was allergic to mold, dust, and other irritants. However, there was no evidence in the form of expert testimony that appellant was allergic to the particular mold in the residence or that such mold was the cause of any of his symptoms. Having failed to present expert evidence as to a causal connection between appellant's alleged exposure to mold and any medical symptoms, appellant cannot demonstrate the trial court abused its discretion in not providing the instruction at issue. *Caputo.*

{¶ 14} Accordingly, appellant's second assignment of error is without merit and is overruled.

{¶ 15} We will address appellant's first and third assignments of error jointly. Under his first assignment of error, appellant contends that the jury's awarding no damages was contrary to law and against the manifest weight of the evidence. Under his third assignment of error, appellant argues that in light of the jury verdict finding in his favor on the counterclaim, the trial court erred in issuing an order allocating funds paid into escrow to be used for mold treatment.

{¶ 16} Appellant maintains that when a defendant has engaged in conduct that results in injury to a plaintiff, Ohio law requires an award of at least nominal damages. Appellant further argues that he presented expert testimony at trial establishing that it would cost between $46,000 and $50,000 to remove the mold from the attic area of the house.

{¶ 17} In response, appellee maintains that because he initiated this action as one for forcible entry and detainer, the action is not, in and of itself, an action for damages. Appellee's argument does not address, however, the fact that appellant filed a counterclaim that included a claim for damages for breach of contract regarding the failure to treat the mold issue.

{¶ 18} Regarding appellant's counterclaim, the trial court instructed the jury as to the elements of breach of contract, and further instructed the jury: "If you find by the greater weight of the evidence that [appellant] proved his claim, then you must further decide whether * * * that breach caused [appellant] to suffer any damages, and if so, in what amount."

{¶ 19} The evidence at trial indicated the presence of mold in the attic, but the parties disputed the proper methods and expense necessary to remedy the problem. Appellee presented the testimony of Thomas Flood, a "mold remediator," who had previously inspected the residence and prepared a document in which he provided an estimate for the removal of contaminated mold in the attic of the residence. Flood testified that he provided CPR with an estimate of $5,995 to treat the mold in the attic.

{¶ 20} Appellant presented the testimony of Diane Adams, a certified industrial hygienist, and James Luckino, an architect. Adams opined that there was mold growth on the joists in the attic, and she recommended that the roof be removed because it was "probably more efficient and more economical than trying to scrub the entire underneath of the sheathing." Adams further opined that she would not follow the recommendations contained in the report prepared by appellee's witness, Flood. Luckino similarly testified that the safest and most expeditious manner to treat the mold would be to replace the roof. He estimated that it would cost approximately $50,000 to remedy the problem.

{¶ 21} Under Ohio law, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. Upon a finding of a breach of an agreement, "the law infers damages, and if none are proved, nominal can be recovered." *First Natl. Bank of Barnesville v. W. Union Tel. Co.* (1876), 30 Ohio St. 555, 568. See also *Woodrow v. McGuire* (June 27, 1989), Scioto App. No. 1740, 1989 WL 72799, quoting *Vanderpool v. Waddell* (Nov. 12, 1987), Lawrence

App. No. 1822, 1987 WL 19853 (" 'Where there is a breach of a contract, the law infers damages and if actual damages are not proved, nominal damages may be recovered' ").

{¶ 22} As noted, the jury returned a verdict finding that appellee failed to prove, in the forcible-entry-and-detainer action, that appellant had defaulted under the land installment contract. The jury further returned a verdict against appellee on appellant's counterclaim, finding that appellee had breached the land installment contract regarding the treatment of mold, but the verdict awarded appellant no damages.

{¶ 23} Appellant, noting that the jury was made aware during the trial that appellant had paid certain monies into a court escrow account, suggests that the jury's verdict, finding in his favor on the counterclaim but awarding no damages, may have been the result of the jurors' speculating on the assumption that the money escrowed by court order would be eventually returned to appellant. The record indicates that, during deliberations, the jury submitted the following inquiries to the court: (1) "What happens to the money in court escrow?" (2) "Does the money in the court escrow, paid by [appellant] go to CPR no matter the outcome of this trial?" and (3) "Can the Jury award the money, paid by [appellant] into the court escrow to [appellant]?" The trial court's response to the jury was that "[t]he money in the escrow account will be dealt with by the Court after your service in this case has concluded."

{¶ 24} Following the jury verdict, the trial court conducted a hearing with the parties on May 8, 2007. At that hearing, counsel for appellant argued that the verdicts were the result of confusion by the jurors regarding what they could award in relation to funds held in escrow. The parties also discussed the issue whether funds from the escrow account could be used to treat the mold. The trial court informed the parties during the hearing: "I'm not going to award any funds to treat the mold," noting that such an award "would be clearly contravening of the jury verdict."

{¶ 25} However, the trial court's subsequent order of September 28, 2007, regarding "disposition of funds placed in escrow," specifically included the use of escrow funds deposited by appellant for mold treatment. While noting that appellant was not awarded any damages for breach of contract, the trial court nevertheless deemed it "clear to this Court that the parties will remain at an impasse until the mold issue is dealt with," and the court determined that "the money held in escrow shall be used to treat the mold problem." The court's order further held that the money in the escrow account would be released by the clerk of courts only to treat the mold problem "until such time as that problem has been taken care of," and "[i]f there are any funds remaining from the escrow account they shall be paid to [appellee] since they are * * * funds that were deposited for payments on the land contract."

{¶ 26} While we decline to speculate on whether the jury's verdict may have been a compromise based upon an assumption that appellant would ultimately receive escrow amounts, we agree with appellant's contention that he was entitled to recover, at minimum, nominal damages, and we find that the portion of the verdict awarding no damages was inconsistent with the finding of liability for breach of contract, and against the manifest weight of the evidence. Accordingly, we sustain appellant's first assignment of error and remand this matter for a new trial as to damages on appellant's counterclaim for breach of contract.

{¶ 27} The focus of appellant's third assignment of error is the trial court's order regarding "disposition of funds," in which the court addressed treatment of the mold problem with escrow funds. While we view the trial court's order as an honest attempt to reconcile the jury verdict and to fashion an equitable remedy as a result, in part, of the jury's awarding no damages, we find the issues raised under the third assignment of error to be rendered moot in light of our disposition of the first assignment of error remanding this matter for a new trial as to damages.

{¶ 28} We next address appellee's cross-assignment of error, in which he asserts that the trial court erred in instructing the jury on his claim for forcible entry and detainer. Specifically, appellee argues that the trial court erred in instructing the jury to find for appellee if he had proved by a preponderance of the evidence that appellant had defaulted under the land installment contract by failing to pay required monthly installments, and that appellant "had no legal justification" for nonpayment.

{¶ 29} A trial court has a duty to instruct the jury as to "the applicable law on all issues raised by the pleadings and evidence." *Booth v. Duffy Homes, Inc.*, Franklin App. No. 07AP–680, 2008-Ohio-5261, 2008 WL 4517808, at ¶ 14. Further, "[w]hether jury instructions correctly state the law is a question of law that an appellate court reviews de novo." Id. at ¶ 15.

{¶ 30} R.C. Chapter 1923 governs actions for forcible entry and detainer. R.C.1923.061(A) provides that "[a]ny defense in an action under this chapter may be asserted at trial." Thus, under R.C.1923.061, any defense to forcible entry and detainer may be asserted at trial, and a counterclaim may be interposed based upon nonpayment. *Jemo Assoc., Inc. v. Garman* (1982), 70 Ohio St.2d 267, 270, 436 N.E.2d 1353.

{¶ 31} In the instant case, prior to closing arguments, the trial court informed counsel for appellee that the "no legal justification" language would be included in the instructions because it "takes into account the nature of the defense." More specifically, the court explained that "if the jury were to find that [appellant] had a legitimate reason for not making the payment, then there's no right to

immediate restitution." Id. Here, because appellee's complaint alleged that appellant failed to make payments under the contract, and, in light of the defenses and counterclaim raised by appellant, we find no error with the court's instruction encompassing whether there was legal justification for nonpayment. Accordingly, appellee's single cross-assignment of error is overruled.

{¶ 32} Finally, appellee has filed a motion to dismiss this appeal, arguing that the trial court's interpretation of the jury's verdicts, and the court's disposition of escrow funds, did not fully address amounts due to appellee "following successful mold treatment." The trial court's attempt to fashion a remedy regarding the issue of mold treatment, following the jury's verdicts, has been addressed above, and appellee's motion to dismiss is hereby denied.

{¶ 33} Based upon the foregoing, appellant's first assignment of error is sustained, appellant's second assignment of error is overruled, appellant's third assignment of error is rendered moot, appellee's cross-assignment of error is overruled, and appellee's motion to dismiss is denied. Accordingly, the judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this matter is remanded to that court for further proceedings in accordance with law, consistent with this opinion.

Motion to dismiss denied;
judgment affirmed in part
and reversed in part,
and cause remanded.

KLATT and KLINE, JJ., concur.

KLINE, J., of the Fourth District Court of Appeals, sitting by assignment.