MEYER, Appellee,

v.

CHIEFFO, Appellant. (Two Cases)

[Cite as *Meyer v. Chieffo*, 193 Ohio App.3d 51, 2011-Ohio-1670.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 10AP–683 and 10AP–684.

Decided April 7, 2011.

52

See also 2009 WL 1653561

54

Wolfe & Russ, L.L.C., and Grant A. Wolfe, for appellee.

Tyack, Blackmore & Liston Co., L.P.A., and Thomas M. Tyack; and Dominic Chieffo, for appellant.

DORRIAN, Judge.

{¶ 1} Defendant-appellant, Dominic Chieffo, appeals from a judgment of the Franklin County Court of Common Pleas awarding damages to him on his breach-of-contract claim, awarding damages to plaintiff-appellee, Phillip Meyer, on Meyer's counterclaims, and ordering the use of certain escrowed funds to satisfy the judgment. For the reasons that follow, we affirm in part and reverse in part.

{¶ 2} The tortured history of this case belies the fact that it involves a relatively simple dispute arising from each party's assertion that the other party breached their contract. This decision marks the fifth time that this court has ruled on a matter related to this dispute. The genesis of the case is a land-installment contract entered into between Meyer and Chieffo on November 11, 2003. The contract provided that Chieffo would purchase the house and property located at 15 Grandview Drive, Dublin, Ohio, for $200,000. The contract required Chieffo to make a down payment of $10,000 and pay the remainder of the purchase price in monthly installments beginning on December 1, 2003. Any

unpaid principal and interest was to be included in a balloon payment due by May 31, 2008.

{¶ 3} On August 15, 2005, Meyer filed a complaint in the Franklin County Municipal Court seeking forcible entry and detainer and termination of the land-installment contract (the "initial case"). The complaint asserted that Chieffo breached the contract by failing to make monthly payments. Chieffo subsequently filed a counterclaim containing 16 causes of action, including negligence, breach of warranty, nuisance, and breach of contract. These counterclaims were based on Chieffo's assertion that there was mold in the attic of the house and that Meyer had failed to remedy the mold problem. Chieffo sought compensatory and punitive damages in excess of $25,000. On November 8, 2005, the initial case was transferred to the Franklin County Court of Common Pleas because Chieffo's counterclaims exceeded the jurisdictional limit of the municipal court.

{¶ 4} The initial case was then tried to a jury, and on April 27, 2007, the jury returned a verdict that Meyer failed to prove that Chieffo had defaulted on the land-installment contract by failing to make payments without justification. The jury also found that Meyer breached the contract regarding treatment of the mold in the attic. Despite finding in Chieffo's favor, the jury awarded him no damages. On October 26, 2007, Chieffo appealed the damage award to this court (the "first appeal").

{¶ 5} On December 6, 2008, this court ruled on the first appeal, holding that an award of no damages following a favorable jury verdict was contrary to law and against the manifest weight of the evidence. *Meyer v. Chieffo,* 180 Ohio App.3d 78, 2008-Ohio-6603, 904 N.E.2d 560 (*"Meyer I "*), ¶ 26. The court ruled that Chieffo was entitled to at least nominal damages and remanded the initial case for a new trial as to damages on Chieffo's breach-of-contract counterclaim. Id.

{¶ 6} As part of the initial case, on May 2, 2006, the trial court ordered Chieffo to make payments for past-due monthly payments and accruing monthly payments into an escrow account under R.C. 1923.061. Following the jury verdict, Chieffo stopped making payments into the escrow account. In September 2007, the trial court ordered Chieffo to resume making payments under the contract either directly to Meyer or into the escrow account. The trial court also ordered that the funds in the escrow account were to be used to remediate the mold. Subsequently, the trial court learned that Chieffo had not resumed making payments into the escrow account. On September 9, 2008, the trial court again ordered Chieffo to resume making payments into the escrow account. When Chieffo failed to make any additional payments, the trial court issued an order holding Chieffo in contempt of court. Chieffo appealed the order holding him in contempt (the "second appeal") and the order requiring him to resume payments into the escrow account (the "third appeal"). This court consolidated the second

and third appeals and on June 11, 2009, issued a decision. *Meyer v. Chieffo*, 10th Dist. No. 08AP–867, 2009-Ohio-2758, 2009 WL 1653561 (*"Meyer II"*). The court held that the trial court lacked the authority to order Chieffo to continue making payments into the escrow account following the jury verdict. Id. at ¶ 26. Therefore, the trial court erred by holding appellant in contempt for violating an order that was beyond the court's authority. Id.

{¶ 7} Meanwhile, on November 9, 2007, Chieffo filed a complaint against Meyer in the Franklin County Court of Common Pleas, asserting fraud and misrepresentation, breach of contract, negligence, public nuisance, and private nuisance (the "newer case"). Chieffo's claims in the newer case were based on the failure to remediate the mold. Meyer counterclaimed, asserting forfeiture of the contract, damages arising from the forfeiture, breach of contract, and unjust enrichment. On February 20, 2009, Chieffo voluntarily dismissed his claims in the newer case, leaving only Meyer's counterclaims pending.

{¶ 8} Meyer moved to consolidate the newer case with the initial case on October 6, 2008, but the trial court denied the motion to consolidate because the initial case had been tried to a jury verdict. Following this court's remand order in *Meyer I*, Meyer again moved to consolidate the cases for trial. On May 13, 2009, the trial court granted the motion to consolidate the newer case with the initial case on remand.

{¶ 9} On December 21, 2009, the trial court ordered that the funds held in escrow under the initial case were to be transferred to and held under the newer case. Chieffo appealed that order to this court (the "fourth appeal"). This court dismissed the fourth appeal, finding that there was no final, appealable order. *Meyer v. Chieffo* (July 13, 2010), 10th Dist. No. 10AP–56 (*"Meyer III"*).[1]

{¶ 10} The consolidated cases, involving the remand of the initial case for a determination of Chieffo's damages on the breach of contract and Meyer's counterclaims under the newer case, were tried before a judge in March 2010. On June 18, 2010, the trial court entered a judgment awarding damages of $4,071.60 to Chieffo based on Meyer's failure to remediate the mold. The trial court also found for Meyer on his counterclaims in the newer case and awarded him damages of $36,542.17. The trial court ordered that the escrow account, containing $42,425, was to be awarded to Chieffo, subject to Meyer's damages on the counterclaims. The court offset the awards and ordered that Meyer was to be awarded $32,470.57 from the escrow account, with the remainder of the escrow

---

1. An issue related to this ongoing dispute appeared before this court yet again when appellant filed a complaint on November 19, 2009, seeking writs of mandamus and prohibition against the clerk of courts related to handling of the escrow account. On August 31, 2010, the court dismissed that case as moot, because the escrow funds in question were already disbursed. *State ex rel. Chieffo v. O'Shaugnessy* (Aug. 31, 2010), 10th Dist. No. 09AP–1083.

account going to Chieffo. The court further ordered that the land-installment contract was terminated and that all title to and interest in the land reverted to Meyer.

{¶ 11} Appellant appealed from the trial court's judgment, asserting the following assignment of error:

The final judgment entry by the trial court is against the manifest weight of the evidence and contrary to law.

{¶ 12} Although appellant's sole assignment of error purports to challenge the final judgment entry, appellant's brief also raises several issues pertaining to matters outside the scope of the final judgment entry. We begin by separately addressing these issues. First, we consider whether res judicata barred consideration of appellee's counterclaims in the newer case. Second, we will evaluate appellant's claim that the trial court lacked authority to retain the escrowed funds and to transfer the funds to the newer case. Then, we will turn to appellant's claims regarding the trial court's judgment and award of damages.

{¶ 13} Appellant asserts that the trial court erred by considering appellee's counterclaims in the newer case, arguing that these matters were barred by res judicata following the jury verdict in the initial case. "Res judicata operates to preclude the relitigation of a point of law or fact that was at issue in a former action between the same parties and was passed upon by a court of competent jurisdiction." *Reasoner v. Columbus,* 10th Dist. No. 04AP–800, 2005-Ohio-468, 2005 WL 289574, ¶ 5, citing *State ex rel. Kroger Co. v. Indus. Comm.* (1998), 80 Ohio St.3d 649, 651, 687 N.E.2d 768. "The party asserting res judicata must show the following four elements: (1) there was a prior valid judgment on the merits; (2) the second action involved the same parties as the first action; (3) the present action raises claims that were or could have been litigated in the prior action; and (4) both actions arise out of the same transaction or occurrence." Id. The doctrine of res judicata encompasses both claim preclusion and issue preclusion. Claim preclusion, which the appellant asserts here, "provides that a valid, final judgment rendered on the merits after a fair and full opportunity to litigate all claims bars all subsequent actions between the same parties or their privies arising out of the transaction or occurrence that gave rise to the prior action." *Rabin v. Anthony Allega Cement Contr., Inc.* (2001), 10th Dist. No. 00AP–1200, 2001 WL 1355979, citing *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 382–383, 653 N.E.2d 226.

{¶ 14} Appellee asserted four counterclaims in the newer case: (1) forfeiture of the land-installment contract, (2) damages due to the forfeiture, (3) breach of contract, and (4) unjust enrichment or quantum meruit. Three of the four elements of res judicata are clearly met with respect to appellee's counterclaims.

The April 2007 jury verdict in the initial case constituted a valid judgment on the merits. The same parties are involved in both the initial case and the newer case. Additionally, the initial case and the newer case arise from the same series of transactions—i.e., the land-installment contract, appellant's occupancy of the house, and the dispute over the mold in the attic. Therefore, the application of res judicata turns on whether appellee's counterclaims in the newer case were or could have been litigated in the initial case.

{¶ 15} Appellee's counterclaims for forfeiture of the land-installment contract and damages arising from that forfeiture are clearly barred by res judicata because they are essentially identical to appellee's claims in the initial case. Likewise, the jury's finding that appellee failed to prove appellant breached the contract by refusing to make payments without justification precludes an attempt to relitigate this issue by bringing another breach-of-contract claim. However, portions of appellee's unjust-enrichment counterclaim escape the res judicata effect of the prior verdict.

{¶ 16} The doctrine of unjust enrichment, discussed more fully below, applies when a benefit is conferred and it would be inequitable to permit the benefitting party to retain the benefit without compensating the conferring party. Appellee's unjust-enrichment counterclaim seeks to recover compensation based on the appellant retaining and living in the house without making payments under the contract or rental payments. The unjust-enrichment counterclaim is effectively two claims, one seeking to recover the rental value of the property while the contract was in effect and a second seeking to recover the rental value of the property after the contract expired. A claim for unjust enrichment during the period when the contract was still in effect is barred by res judicata because appellee could have included this claim in his original complaint or amended his complaint prior to the jury verdict to include a claim for unjust enrichment because appellant was not making monthly payments under the contract. In effect, appellee sought these damages in his original complaint by requesting compensation for the difference between the amount appellant paid under the contract and the fair rental value of the property. As discussed above, because the jury ruled on claims related to the contract, res judicata bars appellee from bringing additional claims based on the contract.

{¶ 17} The postcontract period, however, is another matter. Appellee could not have brought a claim in the initial case for unjust enrichment after the contract expired because the contract was still in effect at the time. It would have been mere speculation to claim that appellant would remain in the house beyond May 2008 without completing the purchase or making rental payments. A claim is not ripe "if it rests on contingent future events that may not occur as anticipated or may never occur at all." *State v. Loving,* 180 Ohio App.3d 424,

2009-Ohio-15, 905 N.E.2d 1234, ¶ 4, citing *Texas v. United States* (1998), 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406. Thus, a claim for unjust enrichment following the expiration of the contract would not have been ripe under the initial case.

{¶ 18} Moreover, the Supreme Court of Ohio has declared that *"res judicata* is not a shield to protect the blameworthy." *Davis v. Wal–Mart Stores, Inc.* (2001), 93 Ohio St.3d 488, 491, 756 N.E.2d 657. The doctrine " ' is not to be applied so rigidly as to defeat the ends of justice or so as to work an injustice.' " (Emphasis omitted.) Id., quoting 46 American Jurisprudence 2d (1994) 786–787, Judgments, Section 522. The land-installment contract terminated on May 31, 2008, but appellant continued living on the property until April 2009. Although appellant entered into an agreement with appellee in August 2009 to facilitate the sale of the property, appellant did not surrender his keys to the house until October 2009. Thus, beyond the ongoing contract dispute, appellant retained possession, control, or access to the property for approximately 17 months after the land-installment contract expired. Once the contract expired, appellant stood in the same position as a squatter on the property. Even if appellant was correct that the jury verdict relieved his obligations to pay under the contract, it is quite another matter to permit appellant to retain the property rent-free for an additional year and a half beyond the term of the contract. Because this claim could not have been litigated in the prior action, and appellee did not have a fair and full opportunity to litigate the claim, we find that appellee's unjust-enrichment claim for the postcontract period is not barred by res judicata.

{¶ 19} Appellant also claims that the trial court had no authority to retain the escrowed funds after entry of the order reflecting the jury's verdict. Appellant asserts that the trial court lacked authority to retain these funds because R.C. 1923.061(B) requires complete distribution of escrow funds under R.C. Chapter 1923 after adjudication. This court recognized this principle in our decision in *Meyer II*, 2009-Ohio-2758, 2009 WL 1653561, at ¶ 21 ("the authority R.C.1923.061(B) grants to a trial court ends immediately after judgment with the mandated distribution of the money held in the escrow fund"). Thus, appellant argues that because judgment was rendered in his favor and no damages were awarded to appellee, the trial court was required to distribute the entire escrow account to appellant.

{¶ 20} R.C.1923.061(B) provides as follows:

In an action for possession of residential premises based upon nonpayment of the rent or in an action for rent when the tenant or manufactured home park resident is in possession, the tenant or resident may counterclaim for any amount he may recover under the rental agreement or under Chapter 3733. or 5321. of the Revised Code. In that event, the court from time to time may order

the tenant or resident to pay into court all or part of the past due rent and rent becoming due during the pendency of the action. After trial and judgment, the party to whom a net judgment is owed shall be paid first from the money paid into court, and any balance shall be satisfied as any other judgment. If no rent remains due after application of this division, judgment shall be entered for the tenant or resident in the action for possession. If the tenant or resident has paid into court an amount greater than that necessary to satisfy a judgment obtained by the landlord, the balance shall be returned by the court to the tenant or resident.

{¶ 21} As explained in *Sandefur Mgt. Co. v. Smith* (1985), 21 Ohio App.3d 145, 21 OBR 155, 486 N.E.2d 1234, there are several prerequisites that must be met before the portion of R.C.1923.061(B) requiring judgment for the tenant will be applied:

(1) [T]he action must be for possession of residential premises based upon nonpayment of rent; (2) the tenant must have and assert a counterclaim for an amount due either under the rental agreement or under R.C. Chapter 3733 or 5321; (3) the tenant must be successful on his counterclaim since there can be no net judgment unless both parties are entitled to judgment, the landlord, for past due rent or rent becoming due during the pendency of the action, and the tenant, upon his counterclaim; (4) the trial court in its discretion must have ordered deposit by the tenant of past due rent; and (5) the net judgment for the landlord must be no greater than the amount which the trial court ordered paid into court as a deposit by the tenant.

Id. at 149.

{¶ 22} In the present case, this court's decision in *Meyer I* reversed the jury award of no damages to appellant and remanded the case for a determination of damages. A judgment that leaves the amount of damages unresolved is not a final judgment. *Day's Constr. Co. v. Rosenstock* (Nov. 1, 1994), 10th Dist. No. 94APG02–254, 1994 WL 612391 (Memorandum Decision); *Fireman's Fund Ins. Cos. v. BPS Co.* (1982), 4 Ohio App.3d 3, 4 OBR 23, 446 N.E.2d 181, syllabus. Thus, following our remand, the jury's verdict was no longer a "final judgment" because it did not address the issue of damages. See *State v. Martin*, 10th Dist. No. 09AP–1073, 2011-Ohio-951, 2011 WL 743213, ¶ 12 ("After remand, there was no final judgment"). Absent a final judgment, the conditions laid out in the *Sandefur Mgt.* decision are not satisfied—there can be no determination of the net judgment when there is no final judgment order. Therefore, R.C.1923.061(B) did not require the trial court to release the escrow funds to appellant after the jury verdict was remanded for a determination of appellant's damages.

{¶ 23} Appellant further asserts that the trial court lacked authority to order the transfer of the escrowed funds to be held under the newer case. On

May 13, 2009, the trial court granted a motion to consolidate the initial litigation and the newer case. The trial court subsequently ordered the escrow funds to be transferred to and held under the newer case. Appellant argues that despite consolidating the cases, it was improper for the trial court to apply the escrowed funds to satisfy the judgment entered in the newer case.

{¶ 24} Civ.R. 42(A) provides that "[w]hen actions involving a common question of law or fact are pending before a court, that court * * * may order some or all of the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay." In determining whether to consolidate actions, "the court must determine if there is enough commonality of issues to warrant consolidation and if the parties are substantially the same." *Waterman v. Kitrick* (1990), 60 Ohio App.3d 7, 14, 572 N.E.2d 250. Consolidation of cases will not be overturned absent an abuse of discretion. *Dalicandro v. Morrison Rd. Dev. Co., Inc.* (Apr. 17, 2001), 10th Dist. No. 00AP–619, 2001 WL 379893. In the present instance, the parties to the initial case and the newer case are identical. Likewise, the cases essentially arise from the same facts. Although, as explained above, appellee's claim for unjust enrichment was not ripe at the time of the jury verdict, it arose from the same circumstances that led to the claims the jury decided—i.e., appellant's possession of the property and the continuing dispute between appellant and appellee regarding mold remediation. The trial court did not abuse its discretion in consolidating these cases.

{¶ 25} We note that Civ.R. 1(C) provides that "to the extent that they would by their nature be clearly inapplicable," the civil rules do not apply to certain types of actions including forcible entry and detainer. However, this does not prohibit consolidation of the initial case and the newer case under Civ.R. 42. Although this dispute commenced as an action for forcible entry and detainer, by the time the trial court ordered consolidation, the claim for forcible entry and detainer was no longer at issue. The only remaining issues were appellant's counterclaims in the initial case and appellee's counterclaims in the newer case. Thus, this is not a scenario in which the civil rules would by their nature be clearly inapplicable to the action. Consolidation under Civ.R. 42, therefore, was proper.

{¶ 26} In addition to consolidating the cases, the trial court had authority to retain the escrow account and transfer it to the newer case pursuant to its inherent authority to protect and preserve the subject matter of the litigation. This court recognized that authority in *Meyer II*, stating that "in order to protect and preserve the subject matter of the litigation before it, a court has inherent power to order the escrow of funds likely to be the subject of the final judgment." *Meyer II*, 2009-Ohio-2758, 2009 WL 1653561, at ¶ 22, quoting *Zebrowski v. Hanna* (C.A.1, 1992), 973 F.2d 1001, 1004. Because the trial court properly

consolidated the cases and had inherent authority to protect its jurisdiction by ordering the escrow of funds, there was no error in ordering the escrowed funds to be transferred to and held under the newer case.

{¶ 27} Appellant also claims that transferring the escrowed funds violated the law-of-the-case doctrine under this court's prior decisions in *Meyer I* and *Meyer II.* "The law of the case doctrine provides that 'the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.'" *State v. Harding,* 10th Dist. No. 10AP–370, 2011-Ohio-557, 2011 WL 398147, ¶ 16, quoting *Nolan v. Nolan* (1984), 11 Ohio St.3d 1, 3, 11 OBR 1, 462 N.E.2d 410. Accordingly, our prior decisions are the law of the case for the present matter and any issues resolved in those decisions would apply to subsequent proceedings.

{¶ 28} Appellant's position apparently arises from a belief that our prior decisions mandate distribution of the entire escrow fund to him. It is correct that this court's decision in *Meyer II* recognized that a trial court's authority under R.C. 1923.061(B) ends immediately after judgment. *Meyer II,* 2009-Ohio-2758, 2009 WL 1653561, at ¶ 21. But, as noted above, that decision recognized a trial court's inherent authority to order the escrow of funds to protect and preserve the subject matter of a case before the court. Id. at ¶ 22. Moreover, the *Meyer II* decision did not contemplate the effect of the court's remand order in *Meyer I* and the consolidation of the newer case with the initial case on remand, which occurred less than a month before the *Meyer II* decision. As explained above, following the remand order, the jury verdict was no longer a final judgment because the issue of damages remained unresolved. Based on those developments, the trial court did not violate the law of the case by transferring the escrow funds.

{¶ 29} Finally, appellant argues that the trial court improperly applied the law in reaching its judgment and calculating the damages awarded. Appellant asserts that because of the breach of contract, he is entitled to a rescission of the contract and restitution of all money paid under the contract. Appellant further seeks compensation for various expenses incurred in maintaining, preserving, and improving the property.

{¶ 30} Appellant challenges the judgment as being contrary to the manifest weight of the evidence. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

{¶ 31} With respect to appellant's breach-of-contract claim, the jury previously found that appellee breached by failing to remedy the mold in the attic. The only issue for the trial court on remand was determination of appellant's damages. The trial court denied most of appellant's requested damages and awarded him recovery for costs associated with testing for mold.

{¶ 32} It has been cited as an elementary rule of contracts that when a material breach occurs, the nonbreaching party "may, at his option, elect to rescind the contract, or continue it in force and sue for damages for the breach." *Bryan Publishing Co. v. Kuser,* 3d Dist. No. 7–07–17, 2008-Ohio-2610, 2008 WL 2230074, ¶ 18, citing *Dickson v. Wolin* (Nov. 27, 1934), 9th Dist. No. 2442, 1934 WL 2590. In *Wilson v. Kreusch* (1996), 111 Ohio App.3d 47, 675 N.E.2d 571, the Second District Court of Appeals stated that a plaintiff who elected to pursue a breach-of-contract action was not entitled to also pursue a remedy based on rescission of the contract. Id. at 56. In this case, appellant clearly sought to recover damages under a breach-of-contract theory and pursued that theory all the way to a favorable jury verdict. By electing that recourse, appellant closed the door to recovering on rescission.

{¶ 33} Moreover, " '[r]escission is an equitable remedy.' " *Dassel v. Hershberger,* 4th Dist. No. 10CA6, 2010-Ohio-6595, 2010 WL 5621536, ¶ 24, quoting *Camp St. Mary's Assn. of the W. Ohio Conference of the United Methodist Church, Inc. v. Otterbein Homes,* 176 Ohio App.3d 54, 2008-Ohio-1490, 889 N.E.2d 1066, ¶ 25. "It is of course a fundamental rule of equity that he who seeks equity should come to equity with clean hands, and that he who seeks equity must do equity." *Farley v. Farley* (Aug. 31, 2000), 10th Dist. No. 99AP–1103, 2000 WL 1231091, citing *Klaustermeyer v. Cleveland* (1913), 89 Ohio St. 142, 105 N.E. 278. By appellant's own admission, part of the delay in treating the mold was due to the fact that he disagreed with appellee's treatment plan and limited access to the property. Appellant also held over in the property for 17 months beyond the expiration of the contract without compensating appellee. Thus, appellant has not acted equitably with respect to this dispute.

{¶ 34} Although appellant is not entitled to recover on the basis of rescission of the contract, he is entitled to recover damages arising from appellee's breach of contract. Under these circumstances, damages arising from the breach constitute an adequate remedy at law. See *Dassel* at ¶ 26–29 (discussing availability of rescission when there is no adequate remedy at law). A breaching party is liable for the damages proximately resulting from the breach. *Mills v. Best Western Springdale,* 10th Dist. No. 08AP–1022, 2009-Ohio-2901, 2009 WL 1710765, ¶ 13. Pursuant to the jury's verdict, appellee was liable for damages that proximately resulted from his failure to remediate the mold. At the trial on remand, appellant claimed damages totaling more than $200,000,

including the amount paid under the contract, the amount paid into escrow, various improvements to the property, the cost of his own labor for various home-improvement projects, and attorney fees. The trial court ultimately found that only one item on this list, mold testing by Safex Remediation, was a direct result of the mold, and awarded appellant damages for that cost.

{¶ 35} The trial court's judgment that appellant was entitled to recover only the cost of the mold testing is supported by competent, credible evidence. Appellant's own testimony forms the basis for disregarding most of the itemized damages sought at the trial on remand. Appellant admitted that only four of the items on his list of damages were related to the mold condition: (1) the testing performed by Safex Remediation, (2) the cleaning of the vents in the house, (3) appellant's labor in cleaning the interior of the house, and (4) appellant's labor in power-washing the garage and the basement of the house. However, at trial in the initial case, one of appellant's own experts testified that beyond taking air samples and testing the attic of the house, she did not see anything in other parts of the house requiring further investigation. Thus, the trial court concluded that the cost of cleaning the vents throughout the house and the cost of appellant's labor in cleaning the house and power-washing the garage and basement were not a direct result of the mold in the attic of the house. Appellant's own testimony and the testimony of appellant's expert witness constitute competent, credible evidence supporting the trial court's determination of appellant's damages.

{¶ 36} Appellant also contests the trial court's judgment in favor of appellee. Appellant claims that appellee is not entitled to collect any damages as a consequence of his own breach of contract. Because appellee's breach-of-contract counterclaim is barred by res judicata, he is not entitled to recover on that basis. However, the court's decision reveals that most of the damages awarded to appellee were based on his unjust-enrichment claim.

{¶ 37} Unjust enrichment and quantum meruit are doctrines "derived from the natural law of equity" and share the same essential elements. *Maghie & Savage, Inc. v. P.J. Dick, Inc.*, 10th Dist. No. 08AP–487, 2009-Ohio-2164, 2009 WL 1263965, ¶ 33. A plaintiff seeking to recover under unjust enrichment or quantum meruit must establish that (1) the plaintiff conferred a benefit on the defendant, (2) the defendant knew of the benefit, and (3) it would be unjust to permit the defendant to retain the benefit without payment. Id. The doctrines differ with respect to the calculation of damages—damages for unjust enrichment are "the amount the defendant benefited," while damages for quantum meruit are "the measure of the value of the plaintiff's services, less any damages suffered by the other party." *U.S. Health Practices, Inc. v. Byron Blake, M.D., Inc.* (Mar. 22, 2001), 10th Dist. No. 00AP–1002, 2001 WL 277291.

{¶ 38} The trial court concluded that the fair-market rental value of the property was $1,796.50 per month and awarded appellee 17 months' compensation at that rate for the period from June 2008 through October 2009. It is uncontroverted that appellant received a benefit by remaining in the house after the contract expired on May 31, 2008, and appellant knew that he was receiving that benefit. Appellant testified that he left the house in April 2009 but that he stored some personal property in the house until October 2009. Appellee testified that he recovered the keys to the property from appellant on October 18, 2009. The trial court found that it would be unjust to permit appellant to retain this benefit without compensation. The evidence presented at trial constitutes competent, credible evidence supporting the judgment in appellee's favor for $30,540.50 for 17 months of fair rental value based on unjust enrichment.

{¶ 39} Appellee also sought and was awarded $6,001.67 in damages for utility charges assessed against the property by the Columbus Water Department. Appellee's itemization of these charges indicates that the total covers a span from tax year 2004 through November 2009. Under the terms of the land-installment contract, appellant was responsible for paying utility charges. To the extent that appellee sought recovery for utility charges that appellant was obligated to pay under the contract, those claims are barred by the res judicata effect of the jury verdict. Appellee may recover on his unjust-enrichment claim only for the postcontract period. Therefore, the trial court should not have awarded appellee damages for unpaid utilities prior to May 31, 2008. We reverse and remand this portion of the judgment only. On remand, the trial court should determine what part, if any, of the utility charges are owed to appellee under his unjust-enrichment counterclaim for the postcontract period.

{¶ 40} For the foregoing reasons, appellant's assignment of error is overruled in part and sustained in part. We find that the trial court's judgment and award of $4,071.60 to appellant on his breach-of-contract claim and $30,540.50 to appellee on his unjust-enrichment counterclaim were not against the manifest weight of the evidence. However, we find that the trial court's award of $6,001.67 to appellee for unpaid utility charges includes recovery that was barred by res judicata. We remand the matter for correction of the judgment and award to include only those utility charges within the scope of appellee's unjust-enrichment claim for the postcontract period.

> Judgment reversed in part
> and affirmed in part,
> and cause remanded.

BROWN and FRENCH, JJ., concur.