[Cite as *Leone v. Ohio Lottery Comm.*, 2013-Ohio-4609.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Ignatius J. Leone, | : | |
| Plaintiff-Appellant, | : | |
| v. | : | No. 13AP-307 |
| | | (Ct. of Cl. No. 2010-12338) |
| Ohio Lottery Commission, | : | |
| | | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on October 17, 2013

*Joy S. Wagner*, for appellant.

*Mike DeWine*, Attorney General, *Randall W. Knutti* and *Christopher P. Conomy*, for appellee.

APPEAL from the Court of Claims of Ohio

TYACK, J.

{¶1} Plaintiff-appellant, Ignatius J. Leone ("Leone") brought an unjust enrichment claim against the Ohio Lottery Commission ("Lottery") claiming that the Lottery stole his idea for a game that he invented. The case was tried before the Court of Claims of Ohio on the issue of liability only. The court found in favor of the Lottery, and Leone brought this appeal from the court's March 7, 2013 judgment and decision rendering judgment for the Lottery.

### Assignment of Error

{¶2} Leone assigns a single assignment of error as follows:

THE TRIAL COURT ERRED IN FINDING THAT APPELLANT, IGNATIUS LEONE, FAILED TO PROVE HIS CLAIM OF UNJUST ENRICHMENT AGAINST APPELLEE, THE OHIO LOTTERY COMMISSION, BY A PREPONDERANCE OF THE EVIDENCE.

### *Standard of Review*

{¶3} Leone's assignment of error raises the issue of whether the court's decision was against the manifest weight of the evidence. The civil manifest weight of the evidence standard is set forth in *C. E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, (1978) yllabus ("Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."). When reviewing a judgment under a manifest weight of the evidence standard, a court has an obligation to presume that the findings of the trier of fact are correct. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80-81 (1984). This presumption arises because the trial judge had an opportunity "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Id.* at 80. "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." *Id.* at 81.

{¶4} In this case, however, Leone was the only witness to testify before the trial court. The bulk of the testimony came from depositions admitted into evidence. Thus, with the exception of Leone's live testimony, neither the trial court nor this court was able to weigh credibility based on demeanor, gestures and voice inflections.

### *Factual Background*

{¶5} In early 2003, Leone came up with an idea for a new lottery game. Leone contacted a patent attorney who filed a Provisional Patent Application ("PPA") for him, entitled "Lottery Number Game." Plaintiff's exhibit No. 2. Leone's PPA did not describe an actual game. It was a broadly worded document that described a general structure that could be used to create a large number of games.

{¶6}   The PPA provided the following description of the invention:

In one embodiment, the number selection game of the invention utilizes a defined number array, such as for example 1-20; 1-40; 1-45; as the available field of numbers from which a first number set (such as for example a set of 5, 6, 7 or more) is selected. The initial selection of a first number set from the array may by itself serve as an underlying game, wherein selection of the same set of selected numbers produces a winning result. In the invention however, the first number array is placed in a defined physical arrangement, such as a matrix, as shown in FIG. 1, so that each number of the array has a unique physical location with respect to every other number of the array.

The game may be played as a side game to the non-location specific selection of a set from the first number array, in that the selected set is first compared to the determinative drawing, and secondarily or also compared to the location of the numbers of the selected set in the matrix or other physical arrangement. The failure of the selected set to be drawn in the determinative drawing does not defeat the possibility of one or more or all of the set appearing in a winning arrangement in the matrix. Winning arrangements may be, for example, horizontal, vertical or diagonal alignment as shown in FIG. 1, or any other defined arrangement or arrangements. Also, the arrangement or sequencing of the numbers of the array within the arrangements. Also, the arrangement or sequencing of the numbers of the array within the  arrangement can be modified as shown in FIG. 1 and FIG. 2. When arranged in a matrix, the size of the matrix may be determined by the quantity of numbers in the array, as shown for example in FIG. 2.

In printed form, the game of the invention may be presented adjacent to a listing of the numbers of the array. For example, if a number number array of 1-40 is listed on a game ticket, the same array 1-40 is printed in a defined physical layout (such as a matrix) next to the array listing, with each of the individual numbers of the array in a unique location. The rules of wining number set arrangement are defined, and the player then searches the matrix for the location of each number of the set. As mentioned, a number set which does not match a selected number set in a

> determinative drawing is not precluded from appearing in a winning order in the matrix.

(Plaintiff's exhibit No. 3.)

{¶7} Essentially, Leone's concept combined aspects of two Ohio Lottery games, Pick 5 and Pick 6 along with a matrix of numbers, similar to the grid used in Bingo. The numbers on the matrix would be selected from an array of numbers such as 1-45. It did not specify if all players received the same matrix or different ones. The matrix could be different sizes, such as 4 x 4, 5 x 5 or 5 x 6. Thus, on a 5 x 5 matrix, one way a player could win was by selecting 5 numbers in any order that matched the numbers drawn by the lottery, at a later date. Additionally, the player-selected numbers would be placed on the matrix. If a player matched the winning numbers drawn by the lottery in a vertical, horizontal or diagonal line, the player would also win. Leone also testified that a match of 3, 4, 5 or 6 numbers could also be a winner.

{¶8} On the advice of a friend, Leone contacted Dennis Berg ("Berg"), who at the time was the Deputy Director of the Lottery, to set up an appointment for Leone to come to Lottery headquarters to discuss his idea.

{¶9} Leone and Berg met, and Leone presented his idea to Berg along with the PPA. Leone testified that he asked about keeping the matter confidential, and Berg assured him that the Lottery would. Leone testified that he suggested the name "Lots O' Play" for the new game. However, while other names were mentioned in the PPA, "Lots O' Play" was not included on any document presented at trial.

{¶10} The meeting ended with Berg promising to have his peers review the idea to see if the mathematics of the game were feasible. Berg forwarded the PPA to the Lottery's Product Development Department, and by way of email gave both advantages and disadvantages of the idea. During the summer of 2003, the Lottery sought more information from Leone, but ultimately Berg informed Leone that the Lottery's mathematicians had analyzed the idea and concluded that the game would not work.

{¶11} At a subsequent phone conference, Berg informed Leone that the Lottery's people were unable to make the game work. Berg suggested Leone contact a third-party vendor, Game Tech, to ask their experts if they could make the game work. The Lottery

subsequently sent Leone's PPA to Game Tech with an assurance to Leone that his invention would be kept confidential. Leone was informed that Game Tech could not make the game workable, and thereafter Leone abandoned his patent application and, in his words, "I lost all hope." (Plaintiff's exhibit No. 25, at 27.)

{¶12} Some months later, the Lottery rolled out a new game called "Lot O' Play." Dennis Kennedy, the director of the Lottery from 2000-2004, testified that he, along with the assistance of others, developed a game that was conceptually similar to Bingo and Keno with some differences. Kennedy denied knowing about Leone's idea for the Lottery Number Game. The Lot O' Play game involved a player purchasing a $2 ticket that displayed a 5 x 5 matrix containing numbers from 0-99. Players could choose five numbers or allow random selection. Twice a week drawings were held to select the five winning numbers. If the winning numbers matched the player's matrix in a row vertically, horizontally or diagonally, the player won. Lower tier prizes were awarded for tickets that matched two, three or four of the winning numbers.

{¶13} Leone and a friend were driving to work together when a commercial for the Lot O' Play came over the radio. The friend said the new Lottery game sounded like Leone's game. Leone contacted his attorney and eventually filed this action for unjust enrichment. Leone presented evidence from an expert in statistics. Dr. Thomas H. Short, Ph.D., testified that Leone's idea was not a viable lottery game, but rather a basic general structure from which many games could be generated. Short was of the opinion that Lot O' Play was a "specific realization" of the idea described in the application, but that Leone's idea could spawn any number of lottery or lottery type games, even Bingo.

### Unjust Enrichment

{¶14} In order to prove unjust enrichment, a plaintiff must show that: "(1) the plaintiff conferred a benefit on the defendant, (2) the defendant knew of the benefit, and (3) it would be unjust to permit the defendant to retain the benefit without payment." *Meyer v. Chieffo*, 193 Ohio App.3d 51, 2011-Ohio-1670, ¶ 37 (10th Dist.); *Maghie & Savage, Inc. v. P.J. Dick Inc.*, 10th Dist. No. 08AP-487, 2009-Ohio-2164, ¶ 33.

{¶15} Almost everyone who saw the PPA found it confusing. Even Leone admitted at one point that he did not know what portions of the PPA meant, and he had

trouble articulating what his idea actually was. Leone's game concept had no rules, odds of winning, probabilities or prize structure. Leone argues that he provided the concept and wanted the Lottery to find out if it were feasible from a mathematical standpoint and then devise and market the game. Even so, the absence of many important components of an actual game, resulted in an unspecific, general, and overbroad game concept. Leone's general game structure could even encompass a game such as Bingo.

{¶16} The trial court found that Lot O' Play was distinctly different from Leone's idea in that in Lot O' Play each player was issued a different matrix rather than having the game administrator arrange a matrix that applied to all players. In addition, Leone's idea appeared to have the entire number array arranged in each matrix, while the matrices in Lot O' Play included only 25 of the numbers 0-99 in the array.

{¶17} Having reviewed the deposition evidence as well as the transcript and exhibits, we conclude that the trial court had some evidence that Leone's invention, as presented to the Lottery, was so general and non-specific as to be of no value to the Lottery.

{¶18} Based on the foregoing, Leone's single assignment of error is overruled, and the judgment of the Court of Claims of Ohio is affirmed.

*Judgment affirmed.*

KLATT, P.J., and CONNOR, J., concur.

_____