[Cite as *Baird v. Owens Community College*, 2016-Ohio-537.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Carianne Baird et al., | : | |
| Plaintiffs-Appellants, | : | |
| | : | No. 15AP-73 |
| v. | : | (Ct. of Cl. No. 2011-09187) |
| Owens Community College, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |
| Tiffany Habegger et al., | : | |
| Plaintiffs-Appellants, | : | |
| | : | No. 15AP-76 |
| v. | : | (Ct. of Cl. No. 2010-07865) |
| Owens Community College, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on February 16, 2016

*Charles E. Boyk Law Offices, LLC, Michael A. Bruno,* and *Charles E. Boyk*, for appellants.

*Michael DeWine*, Attorney General, *Christopher P. Conomy, Randall W. Knutti,* and *Velda K. Hofacker*, for appellee.

APPEALS from the Court of Claims of Ohio

BRUNNER, J.

{¶ 1} Plaintiffs-appellants, who are 62 former students in the registered nursing program of defendant-appellee, Owens Community College, appeal from a decision of the Court of Claims of Ohio, rendered on January 7, 2015, denying their motion for partial

summary judgment and granting defendant-appellee Owens Community College's motion for summary judgment as to all claims. We reverse the judgment of the Court of Claims.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2}   The 62 plaintiffs-appellants in these consolidated appeals are former students in the registered nursing program of defendant-appellee, Owens Community College. The college lost its accreditation from the National League for Nursing Accreditation Commission ("NLNAC") in 2009.[1]  The program remains approved by the Ohio Board of Nursing, which permits successful graduates to take the National Council Licensure Examination ("NCLEX") for their nursing license.   Although the college received notice via a letter dated July 27, 2009 that the accreditation had been denied, it did not formally notify its students until it issued a letter on September 26, 2009, after classes for the fall semester already had begun.   The appellants sued for breach of contract, fraud, and unjust enrichment.

{¶ 3}   Appellee moved for summary judgment and maintained that appellants could not prevail on any of their claims as a matter of law.  The Court of Claims concluded that the loss of accreditation did not affect the students' ability to take the state licensing examination, and therefore that appellants suffered no actual damages from the alleged breach of contract.

{¶ 4}   On the fraud claims, the Court of Claims rejected appellants' arguments that appellee fraudulently failed to disclose the conditional status of the schools' accreditation; rather, it found that appellee's description of the program as accredited was not a false statement giving rise to a claim of fraud.  The Court of Claims further held that the statement in the course catalog for 2008-2010 that the RN associate program was accredited by the NLNAC was not a false statement, as the catalog was published in 2008. Moreover, the Court of Claims ruled that any misrepresentation resulting from the loss of accreditation would not have arisen before September 4, 2009, when appellee's right to appeal the NLNAC decision expired.  Thus, the Court of Claims dismissed all claims concerning appellee's alleged misrepresentation of its accreditation status prior to that date.  In the Court of Claims' judgment, appellee's action following September 4, 2009

---

[1] In 2013, the NLNAC changed its name and is now known as the Accreditation Commission for Education in Nursing.

was not concealment of the fact that the college had lost its accreditation, with the intent to mislead and provoke reliance. The court found no evidence that anyone was instructed not to disclose the loss of accreditation.

{¶ 5} Finally, the court dismissed the claim of unjust enrichment because, under Ohio law, the doctrine of unjust enrichment does not apply when a contract actually exists between the parties.

## II. ASSIGNMENT OF ERROR

{¶ 6} On appeal from the summary judgment against them, appellants do not contest the dismissal of their fraud claim but otherwise bring a single assignment of error:

> The trial court erred when it granted the Motion for Summary Judgment of the Defendant-Appellee because the evidence creates a genuine issue of material fact as to whether Appellee's breach of the contract caused damages.

## III. DISCUSSION

{¶ 7} We recently summarized the procedural law relevant to summary judgment in *Gabriel v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 14AP-870, 2015-Ohio-2661, ¶ 11-12:

> Pursuant to Civ.R. 56(C), summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978). "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). Once the moving party meets its initial burden, the nonmovant must set forth specific facts demonstrating a genuine issue for trial. *Id.* at 293, 662 N.E.2d 264 . Because summary judgment is a procedural device to terminate litigation, courts should award it cautiously after resolving all doubts in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-59, 604 N.E.2d 138 (1992).

Appellate review of summary judgments is de novo. *Byrd v. Arbors E. Subacute & Rehab. Ctr.,* 10th Dist. No. 14AP-232, 2014-Ohio-3935. When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination. *Id.*, citing *Maust v. Bank One Columbus*, N.A., 83 Ohio App.3d 103, 107, 614 N.E.2d 765 (10th Dist.1992). We must affirm the trial court's judgment if any of the grounds raised by the movant in the trial court are found to support it, even if the trial court failed to consider those grounds. *Helfrich v. Allstate Ins. Co.*, 10th Dist. No. 12AP-559, 2013-Ohio-4335, ¶ 7, citing *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41-42, 654 N.E.2d 1327 (9th Dist.1995).

{¶ 8}  Appellants maintain that summary judgment was unwarranted under our holding in *Behrend v. State*, 55 Ohio App.2d 135, 141 (10th Dist.1977), that "a student may claim damages when the course materials he or she has taken, and hours of credit toward a degree, either are not acceptable to another school upon transfer, because of the lack of accreditation * * * or when the student has been delayed in the process of his transferring to another college or university."  Appellants contend that the Court of Claims erred in dismissing their claim for breach of contract even in the absence of provable damages, given the availability of nominal damages for breach of contract.  *See Meyer v. Chieffo*, 180 Ohio App.3d 78, 2008-Ohio-6603, ¶ 21 (10th Dist.).

{¶ 9}  On the other hand, the Supreme Court of Ohio decided in *DeCastro v. Wellston City School Dist. Bd. of Edn.,* 94 Ohio St.3d 197, 200 (2002) that "unless a significant right is involved, including inequitable assessment of costs, an appellate court should not reverse and remand a case for a new trial if only nominal damages could result."  Further, "summary judgment may be granted to the defendant in a breach-of-contract case where the plaintiff has failed to provide evidence of economic damages resulting from a breach of contract and has failed to seek injunctive relief or specific performance of a contractual duty, but instead rests his or her right to proceed to trial solely on a claim for nominal damages."  *Id.* at 201.

{¶ 10} After the appellee lost its NLNAC accreditation graduates feared that they would face barriers to licensing, employment or further education in their field.  Some programs, including The Ohio State University RN to BSN option, would accept only

nurses who received an associate's degree or diploma in nursing from an institution with NLNAC accreditation. In support of their allegations of damages, appellants submit the deposition testimony of various "sample plaintiffs," only five of whose situations were presented in opposition to summary judgment. Carianne Baird stated that she could not attend the University of Toledo's RN to MSN program without submitting a "portfolio" that would not have been required if appellee had maintained its accreditation. Other institutions would not accept her for continuing nursing education because her associate's degree is not from an NLNAC accredited institution. Vocational expert Elizabeth Davis submitted an affidavit and attached report for Baird and two other appellants. Davis stated that while Ms. Baird "has been able to find employment opportunities to date, she has still been excluded from a number of future employment possibilities and range of positions available to her." (Elizabeth Davis' Report of Carianne Baird, 2)

{¶ 11} Kelsey Darbyshire testified at her deposition that Lima Memorial Hospital required applicants to have graduated from an accredited nursing school. She indicated on her application that she did not graduate from an accredited program, and had no response. Miracle Huffman was informed by a representative of Chamberlin University that it would not accept her for its BSN program because her degree was not accredited. She did not apply. She applied to the US Department of Veterans Affairs for psychiatric nurse practitioner positions and has received no response. She testified that the Veterans Affairs requires an NLNAC accredited degree, and she does not have it.

{¶ 12} Cherity Saar did not apply to a Lourdes College bachelor's degree program because her non-NLNAC accredited degree would require extra coursework. Lori Stetler testified that she could not apply to The Ohio State University or University of Detroit Mercy RN to BSN program because of appellee's lack of accreditation.

{¶ 13} Kenneth Warshaw characterized his damages as embarrassment when questions are raised about his qualifications. Lasonya Miller explained that the program in which she intended to continue her nursing education required higher course grades to progress into further coursework, because appellee's program was non-accredited. Dawn Maxcy stated that one patient did not want to be treated by an Owens Community College nurse due to lack of accreditation and that she suffered from depression.

{¶ 14} Lynne Hill testified that she could not meet the minimum requirements for her desired job at Cameron Memorial Community Hospital in Angola, Indiana, because the hospital listed graduation from an accredited nursing program as a minimum qualification. Brent McGlone testified that he could not continue his education at institutions such as Otterbein University and The Ohio State University as a result of appellee's lost accreditation. He also believes that he lost job opportunities.

{¶ 15} Appellants further cite statements from appellee's officials regretting the loss of accreditation. On November 13, 2009, provosts Paul Unger and Renay Scott communicated to the students that appellee "values accreditation and we are deeply sorry for letting you down." (Appellant's Brief, 9.) Appellants contend that such statements, along with their own testimony and student-specific damages reports by Elizabeth Davis, sufficed at least to avoid summary judgment although no student could identify an employer that actually rejected applicants due to the accreditation issue. The students' proposed expert on accreditation issues, Elise Scanlon, could not pinpoint any actual, concrete effect on employment from the withdrawal of accreditation. She acknowledged that there are no studies linking NLNAC accreditation to particular outcomes in employment. Scanlon claimed that, generally, program accreditation would be required to continue at the bachelor's level, but she could not give an example. Many appellants were able to continue their education without problems. Baird applied and was accepted to three programs but decided not to attend, and she voluntarily accepted a lower-paying opportunity. She does not believe she has been denied any employment on account of the accreditation issue.

{¶ 16} Appellants' presentation of five "example plaintiffs" for the purposes of the summary judgment motions is problematic. The Court of Claims denied the students' motion for class certification, and our holdings in the *Behrend* litigation recognize the uniqueness of each student's claim for damages on a claim for breach of contract relative to an institution's failure to maintain accreditation. In this matter the Court of Claims decided:

> [N]one of [the nursing students] testified that they were rejected from an institution of higher learning for which they applied based upon the loss of accreditation, that they were denied employment based upon the loss of accreditation, or

that they were not permitted to take the NCLEX based upon the loss of accreditation. The only reasonable conclusion is that no plaintiff suffered actual damages as a result of any breach of contract by defendant. Therefore, defendant is entitled to judgment as a matter of law on plaintiffs' breach of contract claims.

(Footnote omitted.) (Jan. 7, 2015 Decision, 10-11)

Appellants concede that their ability to secure licensure, regardless of NLNAC accreditation, may affect the measure of damages but maintain that removal of national accreditation devalued their education and therefore resulted in compensable harm. NLNAC provided the only national accreditation for associate and practical nursing degree programs and therewith evaluation by an independent peer group. Appellants submitted an affidavit from Scanlon, who opined that graduates from an accredited program tend to have less difficulty transferring credits, matriculating to higher degree levels and establishing eligibility out of state. She noted that Veterans Health Administration hospitals required NLNAC or Commission on Collegiate Nursing Education accreditation for nursing employment, and the National Council of State Boards of Nursing ("NCSBN") adopted a model act requiring advanced practice registered nurses to be graduates of programs which in turn require graduation from an accredited undergraduate program. Scanlon also cited a 2004 NCSBN "white paper" indicating that five states required national accreditation for nursing board approval, with two states indicating, and an additional state considering, such a requirement in the future.

{¶ 17} In *Behrend,* we stated that there would have to be "proof of any pecuniary loss due to delay of those in transferring to other schools, and proof of loss or delay in being able to take the appropriate state professional exams. All of such must be proven by the individual claimant based upon the facts of his or her given case." *Id.* at 141 . After our reported decision, we reviewed three additional related appeals on the issue of damages. *Behrend v. State,* 10th Dist. No. 78AP-575 (Feb. 22, 1979); *Behrend v. State,* 10th Dist. No. 80AP-328 (Nov. 12, 1981) (*Behrend III*); *Behrend v. State,* 10th Dist. No. 83AP-480 (Mar. 22, 1984). In *Behrend III,* ten plaintiffs appealed following trial on damages. The evidence was that Ohio University failed to perform its contract and grant the plaintiffs an accredited degree in architecture which would qualify them for

examination for licensure as an architect years sooner than would the serving of an apprenticeship with an unaccredited degree. On damages, the evidence necessarily was different for each of the plaintiffs. Thus, we explained:

> Since defendants breached the contract, *plaintiffs are entitled to damages for their loss of bargain.* Essentially, the damages would be that which would place plaintiffs in the same position that they would have been had defendants performed the contract. Plaintiffs, of course, alternatively have a right to seek recovery of that which they paid defendants, less the value of that received, as well as consequential damages. Unfortunately, the measurement of damages is difficult in this case. As we have stated previously, no plaintiff is entitled to a set amount of money per year for the rest of his life as damages. On the other hand, *the impairment of each plaintiff's earning capacity as the result of defendants' breach is compensable.* Each plaintiff, however, has a duty to mitigate damages and to attempt to restore his diminished earning capacity. In many instances, this could be accomplished by attaining education elsewhere. In such an event, the cost of such education, coupled with the loss of earnings during the necessary time to complete such education, would be compensable as damages so long as the total amount thereof would not exceed the damages to which such plaintiff would be entitled for impairment of earning capacity during his lifetime.

> In this respect, what is primary is not loss of earnings but, rather, loss of earning capacity. Thus, loss of a specific job or specific fees would not be compensable because it would be too speculative as to whether any single plaintiff would in fact receive such fees as to which no contract previously had been entered into.

(Emphasis added.) *Id.* at 5-6.

{¶ 18} We likened the case of diminished earning capacity to property damage:

> A plaintiff is not required to have his personal property repaired before he is entitled to damages for the cost of repair so long as it does not exceed the difference in the before and after market value of the personal property. Under such circumstances, the plaintiff is entitled to compensation even though he elects never to have the personal property repaired. The damages is the difference in market value of the property, not the cost of repair.

*Id.* at 7.

Although appellee's loss of NLNAC accreditation did not preclude its students from taking the NCLEX or impair their ability to obtain licensure in Ohio, it did not foreclose the likelihood that any student's earning capacity is impaired or that the Owens Community College degree has been devalued.  Of course, the measure of damages is difficult and must be considered in each individual case.  We reject appellee's contrary argument that any damages caused by the alleged breach of contract were necessarily uniform and uniformly negligible. As we stated more recently in *Alternatives Unlimited-Special, Inc. v. Ohio Dept. of Edn.*, 10th Dist. No. 12AP-647, 2013-Ohio-3890, ¶ 23:

> Generally, to recover for breach of contract, a plaintiff must prove the existence of economic damage as the result of the breach. *H & F Transp., Inc. v. Satin Ride Equine Transport, Inc.*, 9th Dist. No. 06CA0069-M, 2008-Ohio-1004, ¶ 18; *Leiby v. Univ. of Akron*, 10th Dist. No. 05AP-1281, 2006-Ohio-2831, ¶ 24-25; 2600 *Far Hills Bldg. Partnership v. Premier Integrated Med. Assn., Ltd.*, 2d Dist. No. Civ.A.20268, 2004-Ohio-5289, ¶ 14. Recovery does not require proof of the amount of the economic damage*. Allied Erecting & Dismantling Co., Inc. v. Youngstown*, 151 Ohio App.3d 16, 783 N.E.2d 523, 2002-Ohio-5179, ¶ 65 (7th Dist.) ("[R]ecovery is precluded only when the existence of damages is uncertain, not when the amount is uncertain."); *Woehler v. Brandenburg*, 12th Dist. No. CA2011-12-082, 2012-Ohio-5355, ¶ 35 (holding the same). A plaintiff may recover nominal damages where "some injury has been done, the extent of which the evidence fails to show." *Lacey v. Laird*, 166 Ohio St. 12, 139 N.E.2d 25 (1956), paragraph two of the syllabus. Thus, even if a plaintiff fails to prove the actual amount of economic damage, the trial court may enter judgment for the plaintiff and award nominal damages. *DeCastro v. Welleston City School Dist. Bd. of Edn.,* 94 Ohio St.3d 197, 199, 2002-Ohio-478, 761 N.E.2d 612 (2002).

{¶ 19} We find no error in the Court of Claims' conclusion that none of the appellants submitted sufficient evidence of economic damages based on their rejection from specific employment or a higher degree program.  However, a claimant's inability to demonstrate a specific denial of employment due to the program's loss of accreditation does not defeat damages on account of lost earning capacity as we recognized in *Behrend.* The Court of Claims did not consider the claim for such damages expounded by the Supreme Court in the context of personal injury. "The measure of damages for

impairment of earning capacity is the difference between the amount which the plaintiff was capable of earning before his injury and that which he is capable of earning thereafter." *Hanna v. Stoll*, 112 Ohio St. 344, 353 (1925). The claimant must offer sufficient proof of any future impairment and also sufficient evidence of the extent of prospective damages flowing from the impairment. *Phillips v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 12AP-965, 2013-Ohio-5699, ¶ 8; *Eastman v. Stanley Works*, 180 Ohio App.3d 844, 2009-Ohio-634, ¶ 23 (10th Dist.); *Power v. Kirkpatrick,* 10th Dist. No. 99AP-1026 (July 20, 2000). In order to recover for impaired earning capacity, the plaintiff must prove by sufficient evidence that he is reasonably certain to incur such damages in the future. *Phillips* at ¶ 9. The Court of Claims avoided considering most of the issues raised by the appellants by first reviewing the issue of whether they could prove specific damages. Based upon the above holdings, and in keeping with what we stated in *Behrend III*, it is appropriate to reverse and remand the Court of Claims' judgment for further proceedings. In considering the question of damages, albeit before issues relating to the substantive merits of the case, the Court of Claims should have considered whether each of the appellants suffered impaired earning capacity or other compensable damages and what those damages would be to place them in the same position that they would have enjoyed if appellee had performed its contract.

{¶ 20} Since there exists a genuine issue of material fact concerning damages, the Court of Claims must also determine, in addition to whether any appellant can prove diminished earning capacity, whether any appellant produced sufficient evidence that appellee breached its contract with her or him. We will not presume to direct the Court of Claims in which order to consider these issues, except that, at some point, the Court of Claims must test the evidence against the law to determine if one or more breaches existed. If no breach is found, there is no need to consider damages. This potential two-step analysis must be made as to each individual appellant, since the Court of Claims has found that no class exists. The Court of Claims must consider whether there has been a breach of contract, and if so, whether diminished earning capacity and damages therefore flow from such a breach, and it must make this finding as to each individual appellant.

{¶ 21} " '[W]hen a student enrolls in a college or university, pays his or her tuition and fees, and attends such school, the resulting relationship may reasonably be construed

as being contractual in nature.' " *Bleicher v. Univ. of Cincinnati College of Med.*, 78 Ohio App.3d 302, 308, (10th Dist.1992), quoting *Behrend* at 139. The terms of such a contract may be found in the college or university catalog, handbook, and/or other guidelines supplied to the students. *Prince v. Kent State Univ.,* 10th Dist. No. 11AP-493, 2012-Ohio-1016, ¶ 30; *Tate v. Owens State Community College*, 10th Dist. No. 10AP-1201, 2011-Ohio-3452, ¶ 21; *Lewis v. Cleveland State Univ.*, 10th Dist. No. 10AP-606, 2011-Ohio-1192, ¶ 14. "However, where the contract permits, the parties may alter its terms by mutual agreement, and any additional terms will supersede the original terms to the extent the two are contradictory." *Bleicher* at 308. "To prevail on a breach of contract claim, a plaintiff must prove the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Prince* at ¶ 24, citing *Wells Fargo Bank, N.A. v. Sessley*, 188 Ohio App.3d 213, 2010-Ohio-2902, ¶ 32 (10th Dist.).

{¶ 22} On the first page of the registered nursing section of the course book appellee provided to students, appellee listed its NLNAC accreditation foremost, and according to appellants, providing an NLNAC accredited education was part and parcel of appellee's "deal" with each of them. By contrast, appellee urges that a text box in another part of the course book contains a disclaimer for changes in circumstance, stating that it "reserves the right to modift [sic] rules, policies, fees, program requirements, course scheduling and courses offered during any specific semester, and any other matter, without notice." (Appellee Reply Brief, 17.)

{¶ 23} Appellee submits that summary judgment should be affirmed on the alternative basis that this language effectively excludes the loss of NLNAC accreditation from the contractual relationship between it and its students. Without more evidence, or a more explicit disclaimer, we find that genuine issues remain to preclude summary judgment based on appellee's alternative argument that the NLNAC's withdrawal of accreditation did not constitute a breach of a material term of the contract. We are bound to construe the evidence in favor of the party against whom the motion for summary judgment is made. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.,* 78 Ohio St.3d 181, 183 (1997); *Brown v. FMW RRI NC, LLC*, 10th Dist. No. 14AP-953, 2015-Ohio-4192, ¶ 10.

{¶ 24} Appellee's president and provost acknowledged the importance of the accreditation in the wake of its removal after more than 30 years, stating that the loss was a very hard blow to the program and that the students had been let down. Appellee's former chair of nursing, Cynthia Hall, gave deposition testimony that the nursing program had been accredited by the NLNAC for over 30 years. The NLNAC rendered a negative "Site Visitors' Report" in 2006 and informed appellee that its program fell short of several standards. The NLNAC granted conditional continuing accreditation pending submission, evaluation, and approval of a follow-up report to be submitted in the spring of 2009. The report did not suffice, and the NLNAC Evaluation Review Panel informed Cynthia Hall on June 3, 2009 that it would recommend to the NLNAC Board of Commissioners that appellee's accreditation not be continued. The Board accepted the recommendation of the Evaluation Review Panel, and by letters dated July 27, 2009 and July 30, 2009, appellee received formal notice that its nursing program was no longer accredited by the NLNAC. Appellee decided not to appeal. No formal action was taken to inform the nursing students that accreditation had been lost until a September 26, 2009 letter from the provost after the time when fall semester students could drop courses and receive a refund on tuition and fees. Until October 6, 2009, appellee continued to allow its nursing program to be identified as "NLNAC accredited" on its website.

{¶ 25} We are unable to conclude based on the parties' submissions on summary judgment motions that appellee did not breach its contract with any of the appellants herein as a matter of law. Appellee's motion did not abrogate as a matter of law one or more breaches of its contracts with the individual student appellants by failing to deliver an NLNAC-accredited degree program, and thus, genuine issues of material fact remained for trial.

{¶ 26} Moreover, since the Court of Claims did not address the substantial issues of contract formation, scope and breach, but rather, granted summary judgment solely on the alternative ground of damages, it is appropriate that we decline to address those issues further in the first instance and, instead, remand this matter for the Court of Claims to initially consider and decide them. *See Riverside v. State*, 190 Ohio App.3d 765, 2010-Ohio-5868, ¶ 58 (10th Dist.); *Roark v. Medmarc Cas. Ins. Co.*, 9th Dist. No.

07CA009146, 2007-Ohio-7049, ¶ 16; Manda v. Stratton, 11th Dist. No. 98-T-0018 (Apr. 30, 1999).

{¶ 27} Finally, appellants agree that their claim for unjust enrichment would lie only in the event that their relationship with appellee was not based on an enforceable contract. There is no doubt about this principle or its application under *Behrend* and other pertinent case law.

{¶ 28} For the foregoing reasons, we sustain appellants' assignment of error and reverse the judgment of the Court of Claims, holding that the evidence creates genuine issues of material fact as to whether appellee breached a contract with each appellant, and if so, whether such breach caused damages, including those for diminished earning capacity. We remand this matter to the Court of Claims to ascertain as to each of the appellants whether the appellant has offered sufficient evidence to avoid summary judgment on whether appellee has breached its contract to her or him in losing its NLNAC accreditation, and if such a breach is determined from the evidence, whether she or he has set forth sufficient evidence to create a material issue of fact in support of a claim for diminished earning capacity or other economic loss.

## IV.  CONCLUSION

{¶ 29} Appellants' sole assignment of error is sustained, and the judgment of the Court of Claims is reversed with instructions that the Court of Claims engage in proceedings consistent with this decision.

*Judgment reversed;*
*cause remanded with instructions.*

HORTON, J., concurs.
KLATT, J., dissents.

KLATT, J., dissenting.

{¶ 30} Because I believe the trial court properly granted summary judgment in favor of the appellee based upon appellants' failure to present evidence that they suffered any damages arising from appellee's alleged breach of contract, I respectfully dissent.

{¶ 31} As recognized in the majority decision, none of the appellants submitted evidence of actual economic damages arising from appellee's alleged breach of contract. (Majority decision, at ¶ 19.)  Nevertheless, the majority finds error in the trial court's

judgment because the trial court did not address the possibility that appellants suffered a loss of earning capacity due to the alleged breach of contract. If appellants had presented some evidence of a loss of earning capacity that at least created an issue of fact, I would agree with the majority. However, appellants did not present any evidence demonstrating a loss of earning capacity. In fact, appellants' sole expert witness, Elise Scanlon, conceded that she could not pinpoint any actual concrete effect on appellants' employment prospects based upon the appellee's loss of NLNAC accreditation. (Scanlon Depo., 201.) Scanlon acknowledged that there are no studies linking NLNAC accreditation to particular outcomes in employment.

{¶ 32} To recover for a breach of contract, a plaintiff must prove damages as a result of the breach. *Leiby v. Univ. of Akron*, 10th Dist. No. 05AP-1281, 2006-Ohio-2831, ¶ 24. Moreover, in the absence of a claim for equitable relief, summary judgment may be granted to the defendant in a breach of contract case where the plaintiff's claim is based solely on nominal damages. *DeCastro v. Wellston City School Dist. Bd. of Edn.*, 94 Ohio St.3d 197, 201 (2002).

{¶ 33} The record before us simply reflects no evidence that appellants suffered a loss of earning capacity or any other economic damages beyond possible nominal damages because they graduated from a school that was not NLNAC accredited. Although damage based on a loss of earning capacity is theoretically possible, such damage is mere speculation on this record.

{¶ 34} For this reason, I would overrule appellants' assignment of error and affirm the summary judgment granted by the trial court. Because the appellants' failure to present any evidence of damages, beyond possible nominal damages, prevents them from prevailing on their breach of contract claim, it is unnecessary to address appellee's argument that the loss of NLNAC accreditation does not constitute a breach of its contract with appellants.

{¶ 35} Because the majority reaches a different conclusion on these issues, I respectfully dissent.

_____