| | |
|---|---|
| TIFFANY HABEGGER, et al.<br>　　Plaintiffs<br><br>　　　　v.<br><br>OWENS COMMUNITY COLLEGE<br>　　Defendant<br><br><br><br>AND<br><br><br><br>CARIANNE BAIRD, et al.<br>　　Plaintiffs<br><br>　　　　v.<br><br>OWENS COMMUNITY COLLEGE<br>　　Defendant | Case Nos. 2010-07865 and 2011-09187<br><br>Judge Patrick M. McGrath<br><br><u>DECISION</u> |

{¶1} On January 7, 2015, the court granted defendant's motion for summary judgment as to plaintiffs' claims of breach of contract, fraud, and unjust enrichment, and denied plaintiffs' cross-motion for partial summary judgment. Plaintiffs appealed the decision as to the breach of contract claim only. On February 16, 2016, the Tenth District Court of Appeals issued a decision stating:

{¶2} "For the foregoing reasons, we sustain appellants' assignment of error and reverse the judgment of the Court of Claims, holding that the evidence creates genuine issues of material fact as to whether appellee breached a contract with each appellant, and if so, whether such breach caused damages, including those for diminished earning capacity. We remand this matter to the Court of Claims to ascertain as to each of the appellants whether the appellant has offered sufficient evidence to avoid summary

judgment on whether appellee has breached its contract to her or him in losing its NLNAC accreditation, and if such a breach is determined from the evidence, whether she or he has set forth sufficient evidence to create a material issue of fact in support of a claim for diminished earning capacity or other economic loss." *Baird v. Owens Cmty. College*, 10th Dist. Franklin No. 15AP-73, 15AP-76, 2016-Ohio-537, ¶ 28.

{¶3} The court will begin its analysis with whether any plaintiff has offered sufficient evidence to avoid summary judgment on whether defendant breached its contract with her or him when it lost the National League for Nursing Accreditation Commission (NLNAC) accreditation.

{¶4} Civ.R. 56(C) states, in part, as follows:

{¶5} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." *See also Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, citing *Temple v. Wean United, Inc.,* 50 Ohio St.2d 317 (1977).

**FACTS**

{¶6} Plaintiffs are former students who assert that they were enrolled in defendant's Registered Nursing (RN) program between 2007 and 2009 to obtain an

associate's degree at defendant's two campuses in Findlay and Toledo, Ohio.[1] For approximately 30 years prior to 2009, the RN program had been accredited by the NLNAC. The RN program was also approved by the Ohio Board of Nursing.

{¶7} On March 26, 2007, the NLNAC sent defendant a letter stating that it approved the continuing accreditation of defendant's associate degree in nursing program with the condition that defendant submit a follow-up report in two years. (Defendant's Exhibit 3 to affidavit of Renay Scott, PhD.) The follow-up report was to address the standards of both "faculty" and "educational effectiveness." *Id.* The NLNAC advised defendant that after submission of the follow-up report in the spring of 2009, the NLNAC would either continue its accreditation or remove the nursing program from the list of accredited programs. *Id.*

{¶8} On July 30, 2009, the NLNAC issued a letter to defendant, stating: "This letter is formal notification of the action taken by the National League for Nursing Accrediting Commission at its meeting on July 8-9, 2009. The Board of Commissioners voted to deny continuing accreditation to the associate nursing program. This decision is based on the NLNAC policy that continuing accreditation is denied to programs with conditions status that are found to be in continued non-compliance with any accreditation standard. The details of the decision put forth by the Commission have been sent to the program's nurse administrator." (Defendant's Exhibit 4 to affidavit of Renay Scott, PhD).

{¶9} Cynthia Hall, Chair of defendant's School of Nursing, testified in her deposition that the NLNAC's finding that defendant's RN program was not in compliance with the "faculty" standard was based upon the fact that not all of defendant's full or part-time faculty had attained graduate degrees with a major in

---

[1]The issue of whether certain plaintiffs were, in fact, enrolled in the RN program shall be further analyzed in a later portion of this decision. In addition, plaintiffs Kristine Kirsch, Kimberly Williams, Brittany Steele, Megan Gentz, and Justin Grochowski are no longer parties in this matter. (See notices of voluntary dismissal filed on July 21, 2014 and August 11, 2014.)

nursing. (Hall deposition, pgs. 192-193.) With regard to the standard of "educational effectiveness," Hall testified that the NLNAC found that defendant's RN program lacked evidence that the data that defendant collected was "being aggregated, trended and analyzed" for use in program decision-making and to evaluate job placement rates. *(Id.*, pgs. 193-194.)

**{¶10}** Defendant received notice of the revocation of accreditation from the NLNAC on August 4, 2009. The notice stated that "[a]n educational program that has been denied initial accreditation status may appeal the decision within thirty (30) days of receipt of notice of such denial by filing a written notice of appeal via hand delivery or certified or registered mail." *Id.* Between August 4 and September 4, 2009, defendant's employees decided not to appeal the decision of the NLNAC. Defendant formally announced the loss of accreditation on September 26, 2009, when Mathew McIntosh, PhD, Dean of the School of Health Sciences, issued a letter to defendant's current nursing students, which stated, in relevant part:

**{¶11}** "Recently, you may have learned the Nursing program at Owens Community College had lost accreditation with the National League of Nursing Accrediting Commission (NLNAC). Please be reassured that this status has no bearing on several areas:

**{¶12}** "First, Owens Community College remains accredited by the Higher Learning Commission and the Nursing Program is fully approved by the Ohio Board of Nursing.

**{¶13}** "Second, nursing candidates are still able to sit for the NCLEX-RN examination and when passed, will receive the licensure to practice.

**{¶14}** "Third, students will continue to be provided experiences at local and regional clinical settings.

{¶15} "Fourth, NLNAC accreditation is voluntary, and is not needed for graduates from the program to become employed in Ohio as a registered nurse." (Plaintiffs' Exhibit 18.)

{¶16} The Court of Appeals directed this court to determine "whether there has been a breach of contract, and if so, whether diminished earning capacity and damages therefore flow from such a breach, and it must make this finding as to each individual [plaintiff]." *Baird, supra*, at ¶ 20.

## BREACH OF CONTRACT

{¶17} In their May 21, 2014 cross-motion for partial summary judgment, plaintiffs assert that NLNAC accreditation was a material term of the contract that plaintiffs had with defendant, with the understanding that if plaintiffs enrolled in defendant's nursing program, attended classes, attained sufficient grades, and paid their tuition, they would graduate with an NLNAC-accredited degree; and that the loss of accreditation was a breach of the contract which resulted in damages.

{¶18} A contract has been defined as "a promise or set of promises, actionable upon breach." *Kostelnik v. Helper*, 96 Ohio St.3d 1 (2002). The construction of written contracts is a matter of law. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph one of the syllabus. "'[W]hen a student enrolls in a college or university, pays his or her tuition and fees, and attends such school, the resulting relationship may reasonably be construed as being contractual in nature.'" *Bleicher v. Univ. of Cincinnati College of Med.*, 78 Ohio App.3d 302 (10th Dist.1992), quoting *Behrend v. State*, 55 Ohio App.2d 135 (10th Dist.1977). The terms of the contractual relationship are found in the college catalog and handbook supplied to its students. *Embrey v. Central State Univ.*, 10th Dist. Franklin. No. 90AP-1302 (Oct. 8, 1991). "To prevail on a breach of contract claim, a plaintiff must prove the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Prince v. Kent State University*, 10th Dist. Franklin No. 11AP-493, 2012-Ohio-

1016, ¶ 24, citing *Wells Fargo Bank, N.A., v. Sessley*, 188 Ohio App.3d 213, 2010-Ohio-2902, ¶ 32 (10th Dist.). When interpreting a contract, a court must "attempt to harmonize all the provisions rather than produce conflict in them." *Lewis v. Cleveland State Univ.*, 10th Dist. Franklin No. 10AP-606, 2011-Ohio-1192, ¶ 14, quoting *Ottery v. Bland*, 42 Ohio App.3d 85, 87 (10th Dist.1987).

**First Element:  Existence of a Contract**

{¶19} Defendant submitted a copy of its 2008-2010 college catalog. (Defendant's Exhibit 1 to affidavit of Scott.) A description of the Registered Nursing Program appears on pages 222-223, which states: "ACCREDITATION:  National League for Nursing Accrediting Commission" and lists an address and telephone number for the Commission. It also states, "Approved by the Ohio Board of Nursing."

{¶20} Because the RN associate degree was a two-year program, the catalog also states:  "TRANSFER OPTIONS: Graduates may pursue a bachelor's degree at Bowling Green State University, Lourdes College, Mercy College of Northwest Ohio, Spring Arbor University or the University of Toledo." *Id.*

{¶21} The catalog further states:  "This program is designed to prepare graduates for Registered Nursing positions in a variety of healthcare settings.  The program combines studies at Owens Community College with planned and guided experience in client care in healthcare facilities and community agencies." *Id.*

{¶22} Lastly, on page 223, under the heading "Licensure," the catalog states: "Program graduates are eligible to take the NCLEX-RN examination to become a Registered Nurse. * * * The Ohio Board of Nursing has the right to refuse to grant licensure to applicants who have been convicted of a misdemeanor, felony or egregious felony as described in the ORC Section 4723.09." The catalog also states that all nursing program courses must be completed within a period of four years, and that to be awarded an associate degree, a grade of "C" or higher must be earned in all nursing program courses and all science courses. *Id.* p. 222.

{¶23} Upon review, the only reasonable conclusion is that a contract existed between defendant and the plaintiffs who were enrolled in the RN associate's degree program from July 30 through September 26, 2009, and that the terms of the contract are found in the 2008-2010 college catalog.

**Second Element: Performance by Plaintiffs**

{¶24} For purposes of this part of the decision, the court finds that any plaintiffs who were enrolled in the RN program from July 30, 2009, and remained enrolled after September 26, 2009, when formal notification of the loss of accreditation was announced, have met the initial requirements of performance under a theory breach of contract. However, the following plaintiffs' deposition testimony shows that they have failed to meet the threshold element of performance:

1) Donna Miller testified that she was enrolled in the RN program in the fall of 2009, but failed out of the program that semester because of her academic performance. (Miller deposition, pages 25-26).

2) Amber Gray was enrolled in the RN program in 2009 but she failed out of the program after fall semester 2009. (Gray deposition, p. 66.)

3) Marion Drummer testified that she transferred from the RN program to the licensed practical nursing program (LPN) in the summer of 2008 because she was not making the necessary grades to stay in the RN program. (Drummer deposition, p. 44).

4) Jennifer Massingill was not enrolled in the RN program in the fall of 2009. (Massingill deposition, p. 20.) She was re-admitted into the RN program in spring 2010, because she retook prerequisite courses in the fall of 2009 that she had previously earned poor grades in. (*Id.*, p. 21.) Thus, Massingill was aware of the accreditation loss before she enrolled in the RN program. (*Id.*)

5) Tabitha Mixon testified that she had not been accepted to Owen's RN program, but that she was taking prerequisites for it. (Mixon deposition, p. 18.) She found out about the accreditation loss in fall 2009, but continued to take classes at Owens so that she could transfer to Mercy, although she had not applied to Mercy at the time of her deposition. (*Id.*, p. 19-21.)

6) Ronald Patton testified that he took some pre-requisite courses for the RN program in June 2009, and again in spring 2010, but admits he was never accepted into the RN program at Owens. (Patton deposition, pgs. 13-15; 35.)

7) Tiffany Carter testified that she began the RN program at Owens but was dismissed for academic reasons in fall 2010 and was readmitted in 2011. (Carter deposition, p. 23.) In March 2011, Carter met with an employee of Owens to plan a transition from the RN to the LPN program. (*Id.,* p. 54.)

{¶25} Construing the evidence most strongly in favor of plaintiffs, the only reasonable conclusion is that Miller, Gray, Drummer, Massingill, Mixon, Patton, and Carter cannot, as a matter of law, establish that they met the element of performance to state a claim of breach of contract, because either they were not enrolled in the RN program when it lost its accreditation, or they were enrolled but failed to meet the academic requirements to remain enrolled. Accordingly, defendant is entitled to summary judgment as a matter of law as to these plaintiffs' claims.

{¶26} Furthermore, as another threshold issue, plaintiffs' damages experts, whose testimony will be discussed, *infra*, have based their opinions on what harm has been caused to plaintiffs by graduating with an RN degree that was not accredited by the NLNAC. However, in order to practice as an RN, a nursing student must graduate and pass the licensing examination, the NCLEX. Accordingly, plaintiffs who have not graduated, or passed the NCLEX, are unable to show that the revocation of accreditation has resulted in harm to them, because their failure to graduate or pass the NCLEX would also prevent them from practicing as an RN in Ohio or any other state.

Therefore, upon review of their deposition testimony, the following plaintiffs have failed to establish any harm as a result of the loss of accreditation because they did not graduate from defendant's RN program: Michael Theiman, Lisa Ball, Tina Martin, Dawn Marcy, Roberta Camara, Jeannine Ricker, and Scott Langenderfer. Other plaintiffs either did not take or did not pass the NCLEX at the time that their depositions were taken: Lynne Hill, Jeffrey Horton, Christopher Cook, Tiffany Habegger. Therefore, the only reasonable conclusion is that these plaintiffs cannot show that the loss of accreditation resulted in any harm to them, and defendant is entitled to summary judgment as a matter of law as to these plaintiffs' claims.

**Third Element: Breach by Defendant**

**{¶27}** Plaintiffs assert that the NLNAC's revocation of its accreditation of defendant's associate's degree RN program was a material breach of the contract between defendant and plaintiffs. Defendant maintains that the statement in the catalog, "ACCREDITATION: National League for Nursing Accrediting Commission," was not a promise or guarantee that the program would remain accredited, but, rather, a statement of the current status of accreditation. Defendant points to disclaimer language in the catalog to support its argument that the loss of NLNAC accreditation cannot be construed as a breach of contract. However, the Court of Appeals has ruled that the disclaimer language, without something more specific, does not entitle defendant to summary judgment on that issue. "Without more evidence, or a more explicit disclaimer, we find that genuine issues remain to preclude summary judgment based on appellee's alternative argument that the NLNAC's withdrawal of accreditation did not constitute a breach of a material term of the contract." *Baird, supra*, ¶ 23.

**{¶28}** The sole breach that plaintiffs allege is that when they enrolled in the RN program, it was accredited by the NLNAC, and when they graduated, it was no longer accredited. The dispositive issue, thus, is what effect the loss of NLNAC accreditation had on plaintiffs who graduated from defendant's RN program.

**{¶29}** After defendant's employees learned of the revocation of NLNAC accreditation, they took steps to discover what effect it would have on the nursing program. Renay Scott, Vice Provost for defendant in September 2009, testified in her deposition that she contacted the deans of Lourdes College, University of Toledo, Mercy College, and Spring Arbor, who all stated that those institutions would still admit graduates of defendant's program, despite the accreditation loss. Scott testified that Lourdes College would require graduates to take a one-credit orientation course, which was only mandatory for graduates of RN programs that were not nationally accredited. (Scott deposition, p. 30.)

**{¶30}** Cathy Learn, Education Regulatory Surveyor for the Ohio Board of Nursing, testified in her deposition that all nursing programs in the state of Ohio must be approved by the Ohio Board of Nursing in order for graduates to sit for the national licensing exam, known as the NCLEX, either to become licensed as an RN or an LPN. (Learn deposition, p. 41.) Learn described NLNAC accreditation as an "add-on," meaning that it was not necessary either for Ohio Board of Nursing approval or for eligibility for a graduate of the nursing program to obtain a nursing license in Ohio or any other state. (*Id.*, pgs. 6-9, 40-42, 48-51.)

**{¶31}** Upon review, the court finds that reasonable minds could conclude that defendant committed a breach of contract when the NLNAC accreditation was revoked. The language in the catalog states that the RN program was accredited by the NLNAC, and it is reasonable to conclude that if a student enrolled in the RN program, paid tuition, attended classes, and earned passing grades, that student could expect to graduate with an associate's RN degree that was accredited by the NLNAC. Although defendant argues that the language in the catalog does not guarantee that the program would remain accredited, it is not unreasonable to conclude that its students would have expected that the program would remain accredited when they chose to enroll in the program.

**{¶32}** Accordingly, construing the evidence most strongly in favor of plaintiffs, the only reasonable conclusion is that the plaintiffs who were enrolled in defendant's RN associate degree program from July 30 through September 26, 2009, have offered sufficient evidence to support a claim that the revocation of NLNAC accreditation constituted a breach. Thus, those plaintiffs have provided sufficient evidence to show the existence of a contract, performance by plaintiffs, and breach by defendant. The fourth element of a prima facie case of breach of contract is to show that the breach by defendant resulted in damage to plaintiffs. *Prince*, *supra*.

**Fourth Element: Damage or Loss to Plaintiffs**

**{¶33}** With regard to the element of damage or loss to plaintiffs, the Court of Appeals stated:

**{¶34}** "We find no error in the Court of Claims' conclusion that none of the appellants submitted sufficient evidence of economic damages based on their rejection from specific employment or a higher degree program. However, a claimant's inability to demonstrate a specific denial of employment due to the program's loss of accreditation does not defeat damages on account of lost earning capacity as we recognized in *Behrend* [*v. State*, 10th Dist. Franklin No. 80AP-328 (Nov. 12, 1981)]. The Court of Claims did not consider the claim for such damages expounded by the Supreme Court in the context of personal injury. 'The measure of damages for impairment of earning capacity is the difference between the amount which the plaintiff was capable of earning before his injury and that which he is capable of earning thereafter.' *Hanna v. Stoll*, 112 Ohio St. 344, 353 (1925). The claimant must offer sufficient proof of any future impairment and also sufficient evidence of the extent of prospective damages flowing from the impairment. * * * In order to recover for impaired earning capacity, the plaintiff must prove by sufficient evidence that he is reasonably certain to incur such damages in the future. *Phillips [v. Ohio Dept. of Rehab & Corr.*, 10th Dist. No. 12AP-965, 213-Ohio-5699], at ¶ 9. * * * In considering the question of

damages, albeit before issues relating to the substantive merits of the case, the Court of Claims should have considered whether each of the appellants suffered impaired earning capacity or other compensable damages and what those damages would be to place them in the same position that they would have enjoyed if appellee had performed its contract." *Baird*, *supra*, ¶ 19.

{¶35} Inasmuch as the Court of Appeals has already found that no plaintiff has submitted sufficient evidence of economic damages based upon rejection from specific employment or a higher degree program, the court shall focus on "whether [plaintiffs have] set forth sufficient evidence to create a material issue of fact in support of a claim for diminished earning capacity or other economic loss." *Baird, supra*, ¶ 28.

**IMPAIRMENT OF EARNING CAPACITY**

{¶36} On June 3, 2014, plaintiffs filed the "updated affidavit" of Elizabeth Davis, MS, RN, CRRN, CLCP, CRC, their expert in vocational assessments, to support their claim that they suffered a negative earnings impact as a result of graduating with an associate degree in registered nursing from a program that had lost its NLNAC accreditation.

{¶37} In her updated affidavit, Davis avers, in part:

{¶38} "5. I was asked to conduct vocational assessments to determine whether Carianne Baird, Miracle Huffman, Lori Stetler, and other nursing students have suffered a negative earnings impact as a result of their graduating with an Associate Degree in Registered Nursing from a nursing program that had lost its National League of Nursing Accrediting Commission (NLNAC) accreditation.

{¶39} "6. As an alternative, I was asked to determine the economic cost of re-education and graduation from a nationally accredited R.N. Associate Degree program.

{¶40} "7. In my professional opinion, based upon my years of education training, and experience, and to a reasonable degree of certainty, Carianne Baird,

Miracle Huffman, Lori Stetler, and other nursing students have experienced a loss of earnings capacity due to Owens Community College Nursing Program losing its NLNAC accreditation. Attached hereto and incorporated herein by reference are true and accurate copies of revised reports dated May 29, 2014 that I have prepared reflecting and detailing my professional opinions and bases for said opinions as it pertains to Carianne Baird, Miracle Huffman, and Lori Stetler. These May 29, 2014 reports reflect my revised opinions in light of the fact that these Plaintiffs have secured licensure and employment in Ohio for a sustained time period thus rendering them now capable of securing out-of-state employment as Registered Nurses." (June 3, 2014 affidavit of Davis, paragraphs 5-7.)

{¶41} In her reports dated May 29, 2014, Davis states that she has obtained additional employment and licensure information for Baird, Huffman, and Stetler. Davis opines in her reports that Baird, Huffman, and Stetler "experienced a loss of earning capacity related to the reduction in [their] personal labor market as some individual employers refuse to give consideration to nurses who possess a non-accredited degree. Other employers may offer preferential hiring to persons with accredited degrees. These reductions in available opportunities are highly variable and individualized and thus unable to be calculated within a reasonable degree of professional certainty." (Reports filed on June 3, 2014, regarding Baird, Huffman, and Stetler, paragraph 2.) Davis also opined that Baird, Huffman, and Stetler have "fewer educational advancement opportunities available to [them] now as a result of [their] non-accredited degree related to the fact that not all institutions would allow [them] to freely transfer or apply credits earned via a non-accredited program toward higher learning degrees such as a Bachelor's or Master's Degree in Nursing." (*Id.*, paragraph 3.)

{¶42} Defendant took Davis' deposition on June 25, 2014, which was filed on July 9, 2014. In her deposition, Davis stated that a vocational impairment includes loss of choice and accessing existing positions in the labor market, and she discusses the

relationship of pre-injury vs. post-injury earnings. (Davis deposition, p. 24.) Davis testified that Baird's earning capacity would have been the average earned wages for the state of Ohio at whatever time she graduated, 2010 or 2011, if her degree would have been accredited by NLNAC. *Id.,* p. 50. Davis acknowledged that the data used to calculate the average earned wages for RNs in the state of Ohio does not distinguish whether the RN has an associates or bachelor's degree, or whether those degrees are accredited by the NLNAC. *Id.*, p. 50-52. Although Davis relies on an article that compares the national average salaries of individuals with Bachelor's Degrees in nursing at entry level and again after five years into their careers, the article does not specifically distinguish between data from associates degrees in nursing versus bachelor's degrees in nursing. *Id.,* p. 52.

{¶43} With regard to Baird's loss of earning capacity, Davis testified: "And again, the information that I had here was that she had a non-accredited degree and she was trying to go forward from that point. I do not know what has progressed since then or what she's been able to do. So I cannot provide you with that calculation. Now if I get that information, I can provide you with that calculation." *Id.,* p. 62.

{¶44} With regard to Huffman, Davis admitted that she does not have "figures A and B as to what the loss and non-loss figures would be." *Id.,* p. 73. Davis testified that Huffman's earning capacity would have been the average wages of an RN in Ohio with the accreditation. *Id.*

{¶45} Davis testified that whether the lack of accreditation presents a barrier to employment or not, Baird still has an impairment. Davis further testified that, "[t]here will be situations where it is not a barrier to employment, and there are situations where it is or could be." *Id.,* p. 153. However, Davis testified that she "is not aware of any studies that conclude that NLNAC accreditation affects income for nurses." *Id.,* p. 158.

{¶46} Elise Scanlon, plaintiffs' expert witness in accreditation, testified in her deposition that she is not aware of any empirical research or data showing a statistically

significant relationship between attending an NLNAC accredited program and enhanced objective professional benefits to graduates relative to a program without NLNAC accreditation. (Scanlon deposition, p. 137-8.) Scanlon further testified that she is not aware of any studies that demonstrate that a student who graduates from an NLNAC accredited program does any better as far as jobs, rate of pay, or acceptance into higher educational programs. (*Id.*, p. 201.)

{¶47} An expert witness testifying regarding causation must state an opinion in terms of probability, not possibilities. *Stinson v. England,* 69 Ohio St.3d 451 (1994). "An event is probable if there is a greater than fifty percent likelihood that it produced the occurrence at issue." *Id.* Opinions expressed with a lesser degree of certainty are inadmissible. *Id.* Expert testimony that a defendant's action or inaction "possibly" or "could have" caused a plaintiff's injury is not competent to prove proximate cause. *Shumaker v. Oliver B. Cannon & Sons, Inc.*, 28 Ohio St.3d 367, 369; *Martinez v. Yoho's Fast Food Equip.*, 10th Dist. Franklin No. 02AP-79, 2002-Ohio-6756, ¶ 53; *Dillon v. Univ. Optical*, 10th Dist. Franklin No. 00AP-1055 (May 3, 2001).

{¶48} Upon review of the deposition testimony of both Davis and Scanlon, and Davis' updated affidavit, the only reasonable conclusion is that plaintiffs have failed to produce evidence of any difference between the amount that they were capable of earning with an RN associate's degree that was accredited by the NLNAC, and the amount which they were capable of earning with an RN associate's degree that was not accredited by the NLNAC. Indeed, the information that Davis relied on for her expert reports does not distinguish between salaries in the state of Ohio for RNs with an associate's degree or a bachelor's degree, let alone the NLNAC accreditation status of such a degree. As such, any loss of earning capacity caused by the revocation of accreditation cannot be calculated within a reasonable degree of professional certainty. Likewise, neither Davis nor Scanlon set forth sufficient evidence to reasonably conclude that any plaintiff is reasonably certain to incur economic damages in the future as a

result of graduating from defendant's RN program without NLNAC accreditation. Davis' updated affidavit and the reports she references therein fail to meet the standard of reasonable probability. Inasmuch as Davis' opinions cannot be stated in terms of probability, they are inadmissible and cannot support a claim for lost earning capacity.

{¶49} Finally, the Court of Appeals directed this court to determine whether any plaintiff has set forth sufficient evidence to create a material issue of fact in support of a claim for "other economic loss." The following plaintiffs, who testified that they had graduated from defendant's program and had passed the NCLEX at the time of their depositions, generally described their damages as embarrassment, annoyance, inconvenience, and worry about what their futures would bring when they initially found out about the accreditation revocation. *See* e.g.: depositions of Lori Stetler, Miracle Huffman, Carianne Baird, Cherity Saar, Kelsey Darbyshire, Jonathan Brown, Brent McGlone, Mary Richardson, Jason Rice, David Smith, John Pearson, Amy Hollingsworth, Lisa Sanislo, and Stephanie Matthews. Although these plaintiffs may have been disappointed, embarrassed, or emotionally distraught when the loss of accreditation was announced, damages for emotional disturbance are not ordinarily allowed under a theory of breach of contract. "Recovery for emotional distress damages will be excluded unless a breach of contract also causes bodily harm or the contract or the breach is such a kind that serious emotional distress was a particularly likely result." *Kishmarton v. William Bailey Constr., Inc.*, 93 Ohio St.3d 226, 230, 2001-Ohio-1334. Upon review of the language in the college catalog, the only reasonable conclusion is that any breach of the contract in this matter is not of such a kind that serious emotional distress was a particularly likely result.

{¶50} Lastly, the court notes that nominal damages are available for claims of breach of contract. *Meyer v. Chieffo*, 180 Ohio App.3d 78, 2008-Ohio-6603, ¶ 21 (10th Dist.). However, "summary judgment may be granted to the defendant in a breach of contract case where the plaintiff has failed to provide evidence of economic damages

resulting from a breach of contract and has failed to seek injunctive relief or specific performance of a contractual duty, but instead rests his or her right to proceed to trial solely on a claim for nominal damages." *DeCastro v. Wellston City School Dist. Bd. of Edn.*, 94 Ohio St.3d 197, 201, 2002-Ohio-478. A review of the complaint shows no such claim for injunctive relief or specific performance. Accordingly, inasmuch as reasonable minds can conclude only that no plaintiff has provided evidence to show any loss of earning capacity or other economic loss, summary judgment shall be rendered in favor of defendant.

 

PATRICK M. MCGRATH
Judge

[Cite as *Habegger v. Owens Community College*, 2017-Ohio-2693.]

| | |
|---|---|
| TIFFANY HABEGGER, et al. <br>     Plaintiffs <br><br> v. <br><br> OWENS COMMUNITY COLLEGE <br>     Defendant <br><br><br> AND <br><br><br> CARIANNE BAIRD, et al. <br>     Plaintiffs <br><br> v. <br><br> OWENS COMMUNITY COLLEGE <br>     Defendant | Case Nos. 2010-07865 and 2011-09187 <br><br> Judge Patrick M. McGrath <br><br> <u>JUDGMENT ENTRY</u> |

{¶51} A non-oral hearing was conducted in this case upon defendant's motion for summary judgment and plaintiffs' motion for partial summary judgment. For the reasons set forth in the decision filed concurrently herewith, defendant's motion for summary judgment is GRANTED and judgment is rendered in favor of defendant. Plaintiffs' motion for partial summary judgment is DENIED. All previously scheduled events are VACATED. Court costs are assessed against plaintiffs. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

 

_____
PATRICK M. MCGRATH
Judge

cc:

Charles E. Boyk
Michael Anthony Bruno
Wesley D. Merillat
405 Madison Avenue, Suite 1200
Toledo, Ohio 43604

Christopher P. Conomy
Randall W. Knutti
Velda K. Hofacker
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Tiffany Carter
4111 Harvest Lane, Apt. 12
Toledo, Ohio 43623

Heather Cervantes
102 West Harrison Street, Apt. B
Maumee, Ohio 43537

Kelly Galenski
6425 Coopersmith Road
Sylvania, Ohio 43560

Donna Miller
6255 Telegraph Road, Lot 115
Erie, Michigan 48133

Lynne Hill
14979 County Road 6
Montpelier, Ohio 43543

Jeffrey Horton, Sr.
P.O. Box 149
Toledo, Ohio 43697

Ronald Patton
717 West 1st Street, Apt. 2
Defiance, Ohio 43512

Jeannie Ricker
119 Elm Street
Fostoria, Ohio 44830

**Filed March 24, 2017**
**Sent to S.C. Reporter 5/5/17**